No. 82,591

IN THE MATTER OF THE ADOPTION OF B.M.W.

(2 P.3d 159)

Opinion filed March 17, 2000.

*Charles F. Harris*, of Kaplan, McMillan and Harris, of Wichita, argued the cause and was on the brief for appellant.

*Douglas S. Wright*, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Stepfather petitioned for adoption of minor stepchild. The district court found that even though the father had failed to provide affection and care for the child and had paid only a portion of the court-ordered child support after a threat of con-

tempt, the consent of the child's father was still required for a stepparent adoption, and denied the stepfather's petition for adoption. The stepfather appealed, claiming a father need not fail both the financial and the affection, care, and interest aspects of parenting under K.S.A. 59-2136(d) for the court to grant an adoption petition without the consent of the parent. The stepfather also asserted that child support payments made in response to a contempt order do not constitute a voluntary assumption of parental duties under K.S.A. 59-2136(d). The case was transferred to this court pursuant to K.S.A. 1999 Supp. 20-3016(a).

The minor child, B.M.W., was born on November 11, 1989. B.M.W.'s parents were divorced in Topeka, Kansas, on October 17, 1990. Pursuant to the divorce decree, the parents received joint legal custody of B.M.W. The mother was awarded primary physical custody of the child and the father liberal and reasonable visitation. The father was ordered to pay $95 per month child support commencing November 15, 1990. Since the divorce, the mother has maintained contact with the father, advising him of address changes and permitting visitation when he or his family requested.

On May 28, 1993, the mother married the petitioner. Throughout the 2 years preceding the filing of the stepparent's petition for adoption, the father was a self-employed carpet layer, averaging $1,200 per month. On February 17, 1994, the father was summoned to court for failure to pay child support as ordered in the divorce decree. The judge observed there was an arrearage of $3,505 in child support payments and found the father in contempt for willfully and without good cause failing to pay the child support. The district judge sentenced the father to 10 days in jail. The father was ordered to make a child support payment of $75 by March 15, 1994, a payment of $75 by April 15, 1994, and payments of $150 per month by the 15th of each month for the accruing child support obligation and the arrearage. The judge suspended imposition of the confinement portion of the sentence and set a series of dates for the father to appear in court to demonstrate compliance with the order of child support.

The father failed to make the first two support payments ordered by the court. In May 1994, the father made three payments totaling

$225, resulting in an arrearage of $50 for that period. This pattern of sporadic payments continued until June 5, 1998, the date the stepfather's petition for adoption was filed. The district court's calculation of the arrearage of child support ordered from March 15, 1994, to the date of the trial amounted to $2,163.01.

After hearing the evidence, the court determined that during the 2 years preceding the filing of the stepfather's petition for adoption, the father's few contacts with B.M.W. were incidental, and found that under these circumstances, the father had failed to provide the love and affection required of a parent under K.S.A. 59-2136(d). The district court then determined the father had paid 86 percent of the child support obligation accruing in the 2 years prior to the filing of the petition. The court found that the consent of the child's natural father was required for a stepparent adoption because the father had paid a substantial portion of the support pursuant to the contempt order. The petition for adoption was denied. The stepfather appealed.

The duties of a parent set out in K.S.A. 59-2136(d) include not only the duty of financial support, but also the natural and moral duty of a parent to show affection, care, and interest toward his or her child. See *In re Adoption of K.J.B.*, 265 Kan. 90, Syl. ¶ 3, 959 P.2d 853 (1998). The stepfather argues that under K.S.A. 59-2136(d), the father's parental rights may be severed if he fails to provide either financial support or care and affection for the child. The stepfather asserts that because the district court found that the child's natural father failed to provide care and affection for the child, the district court erred in denying the petition for adoption. The questions require the interpretation of a statute. Interpretation of a statute is a question of law. This court is not bound by the district court's interpretation of a statute. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998); *Smith v. Printup*, 262 Kan. 587, 604, 938 P.2d 1261 (1997).

K.S.A. 59-2136(d) provides that in a stepparent adoption, if a mother consents to the adoption of a child who has a presumed or known father, the consent of the father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for 2 consecutive years next preceding the filing of the

petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required, the court may disregard incidental visitations, contacts, communications or contributions. The statute further provides:

"In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

### In re Adoption of K.J.B.

*In re Adoption of K.J.B.*, 265 Kan. 90, is the latest case in which this court has discussed the failure or refusal of a parent to assume the duties of a parent in the context of a stepparent adoption case. In *K.J.B.*, the father of three minor children appealed the district court's finding that the father had failed to assume the duties of a parent during the 2 years preceding the filing of the petition, after the court granted the stepfather's petition for adoption. The Court of Appeals affirmed the district court. The father's petition for review was granted. The father claimed that social security payments the minor children received through his disability benefits qualified as credits against his liability for child support, and if the payments qualified as support, the district court erred in determining he had "failed or refused to assume the duties of a parent" under K.S.A. 59-2136(d).

After reviewing our prior cases, the *K.J.B* court observed that adoption statutes are to be strictly construed in favor of maintaining the right of a natural parent in a K.S.A. 59-2136(d) case and concluded that K.S.A. 59-2136(d) requires a father to fail both the financial and the affection, care, and interest aspects of parenting before a court may grant a stepparent adoption petition without the father's consent. The *K.J.B.* court then pointed out that unlike the termination of parental rights under K.S.A. 38-1581 *et seq.*, neither the fitness of the natural father nor the best interests of the child are controlling factors in stepparent adoptions. It then observed that 59-2136(d) provides that the father may rebut the

presumption that he failed to assume the financial aspect of parental duties by showing that he provided a substantial portion of the court-ordered child support.

Following Judge Lewis' concurring opinion in *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 101, 897 P.2d 181 (1995), that addressed the duties of a parent by comparison to a "ledger," the *K.J.B.* majority stated that the love and affection aspects of parenting and the financial aspects of parenting occupy separate sides of the ledger. The majority concluded that there must be a failure on both sides of the ledger to judicially sever parental rights under K.S.A. 59-2136(d). 265 Kan. at 101-02. The *K.J.B.* court found that although the father had failed to provide love and affection, the father had avoided the statutory presumption of failure to assume parental duties by obtaining social security benefits for the children under his disability policy. 265 Kan. at 98-99.

Justice Abbott, joined by Chief Justice McFarland, dissented, stating that the legislature intended that the courts look at the entire picture in determining whether a parent has performed parental duties during the 2 years next preceding the filing of a petition for adoption pursuant to K.S.A. 59-2136 and that they would adopt the reasoning of the Court of Appeals majority opinion.

In the *K.J.B.* dissent, Justice Abbott pointed out that this court has consistently held that in determining whether a father has failed to assume the duties of a parent, " 'all the surrounding circumstances must be considered.' *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987)." 265 Kan. at 102. Justice Abbott observed that minor and insignificant contacts between parent and child do not " 'demonstrate true parental interest, care and concern.' *In re Adoption of McMullen*, 236 Kan. 348, 352, 691 P.2d 17 (1984)." 265 Kan. at 102. The dissent further noted that the trial court found that the father's mental health did not significantly impair his ability to assume his parental duties. The trial judge found there were no meaningful or significant contacts between the father and any of his three children. The dissent pointed out that the trial judge and the Court of Appeals had stated that the social security payments should be credited as child support payments and considered in determining whether a father has failed

or refused to assume the duties of a parent, but are not determinative of the issue.

It concluded that the fact that the father provided support through a mandatory insurance plan did not conclusively prove that the father had assumed his parental duties. The dissent stated that under the well-established rules set down by this court, the courts should look at all the facts to determine whether the father has assumed his parental duties during the prescribed period.

### Stepfather's Argument

The stepfather argues that *K.J.B.*'s analysis regarding the parental duties "ledger" is incorrect because the effect of that holding is that payment of a substantial portion of court-ordered child support creates an irrebuttable presumption that consent of the father for the stepparent to adopt is required. The stepfather asserts that the legislature did not create such a presumption but, in fact, established a rebuttable presumption that the knowing voluntary failure to pay a substantial portion of support when financially able to pay support is failure to assume the duties of a parent.

The stepfather urges this court to reconsider the *K.J.B.* holding in light of the legislative history of K.S.A. 59-2136(d). We note that although the *K.J.B.* court in reaching its decision did not review the legislative history of K.S.A. 59-2136(d), this court had previously compared the statutes enacted by the legislature prior to the present version of the statute. See *In re Adoption of S.E.B.*, 257 Kan. 266, 891 P.2d 440 (1995).

The stepfather asserts that "love and affection" and financial support were not intended by the legislature to be "two sides of a ledger," and that each side of the ledger must fail before the court can sever parental rights and permit a stepparent adoption. The stepfather argues that the legislature intended that lack of love and affection and the failure to substantially support are separate criterion for determining whether a father has failed to assumed parental duties. The stepfather further argues that if either the love and affection or the financial support of the natural parent is lacking, the court may, upon consideration of all the circumstances, sever parental rights and permit the stepparent adoption.

## History of Statute

The cardinal rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Degollado v. Gallegos*, 260 Kan. 169, Syl. ¶ 3, 917 P.2d 823 (1996). Where the parties claim the construction of a statute is uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *Kaul v. Kansas Dept. of Revenue*, 266 Kan. 464, Syl. ¶ 4, 970 P.2d 60 (1998), *cert. denied* 528 US. 812 (1999).

Prior to its repeal in 1990, K.S.A. 1989 Supp. 59-2102(a)(3) provided that consent to an adoption of any minor child could be given by "one of the parents, if the other has failed or refused to assume the duties of a parent for two consecutive years." In 1982, 59-2102 was amended to add subsection (b), which expressly allowed the court to disregard incidental visitations, contacts, communications, or contributions in determining whether a parent's consent was required. L. 1982, ch. 182, § 136.

After the enactment of the Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq.*, in 1990, K.S.A. 1990 Supp. 59-2136(d) required the consent of the father in a stepparent adoption "unless such father has failed or refused to assume the duties of a parent for two consecutive years." The statute included language providing that "the court may disregard incidental visitations, contacts, communications or contributions" in determining whether a father's consent is required. In 1991, K.S.A. 59-2136(d) was amended to require the relevant period of 2 consecutive years to be "next preceding the filing of the petition for adoption" and to add a rebuttable presumption that the father has failed or refused to assume the duties of a parent if he has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, during the 2-year period. L. 1991, ch. 167, § 1. *In re Adoption of S.E.B.*, 257 Kan. at 269.

The provision of K.S.A. 59-2136(d) regarding a rebuttable presumption that the father has failed to assume the duties of a parent

due to lack of support was enacted in 1991. The bill was introduced as House Bill 2100 (HB 2100) in the 1991 legislative session. As originally introduced, the relevant portion of the bill stated:

(d) In a stepparent adoption, if a mother consents to the adoption of a child who (1) has a presumed father under (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or (2) *who* has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father: *(1)* Has failed or refused to assume the duties of a parent for two consecutive years, or *next preceding the filing of the petition for adoption; (2) after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption; or (3)* is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions." HB 2100.

On February 12, 1991, the House Judiciary Committee held a hearing on HB 2100. Charles Harris, a Wichita attorney, testified at the hearing. Harris is the stepfather's counsel in this case.

Harris informed the committee that HB 2100 provided an additional separate ground for adoption without consent of the father, and that such a change was needed to provide clear direction from the legislature to the courts regarding the intent of the provision. A committee member expressed reluctance to tie lack of child support to severance of parental rights in an adoption case. Harris responded that under HB 2100, a father who knowingly fails to provide financial support when he is able to provide support waives his right to prevent adoption. Minutes of the House Judiciary Committee, February 12, 1991.

In the written testimony of the Judicial Council on HB 2100, the Judicial Council stated: "The primary purpose of HB 2100 is to make failure to pay child support a separate criterion for eliminating the need for a parent's relinquishment or consent. Failure to pay support would be in addition to the ground that a parent has failed or refused to assume the duties of a parent for two consecutive years." Minutes of the House Judiciary Committee, February 12, 1991, Attachment 1, Judicial Council Testimony on H.B. 2100.

The bill was amended by the House Judiciary Committee. The Committee moved the support provision from the list of findings which justify an order of adoption without the natural father's consent and added the provision to the end of subsection (d). The change suggests an intention by the committee to make lack of support *a factor that the court may take into consideration* when deciding whether the natural father's consent is necessary, rather than an alternate and independent ground for not requiring consent. The amended version of the bill provided:

> (d) In a stepparent adoption, if a mother consents to the adoption of a child who ~~(1)~~ has a presumed father under (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or ~~(2)~~ *who* has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father ~~(1) Has~~ **has** failed or refused to assume the duties of a parent for two consecutive years~~, or next preceding the filing of the petition for adoption, (2) after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, or (3)~~ **or** is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions **and may take into account that the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition.**" HB 2100, as amended by the House Judiciary Committee.

The bill was introduced in the Senate Judiciary Committee on April 1, 1991. Matt Lynch, Kansas Judicial Council, testified in support of the bill. Regarding the House amendments to the bill, Lynch stated:

> "The primary purpose of HB 2100, as introduced, was to make failure to pay child support a separate criterion for eliminating the need for a parent's relinquishment or consent. Failure to pay support would be in addition to the ground that a parent has failed or refused to assume the duties of a parent for two consecutive years. However, the House Judiciary Committee amended subsection (d), which covers most stepparent adoptions, to make failure to pay support a matter the court 'may take into account' in determining whether

there has been a failure to assume parental duties for two years." Minutes of the Senate Judiciary Committee, April 1, 1991, Attachment 8.

The Senate Judiciary Committee amended the bill, moving the support provision back into the position it held in the original bill. See HB 2100, as amended by the Senate Judiciary Committee. The bill then went to conference committee. In final form, HB 2100 subsequently was adopted as K.S.A. 59-2136(d).

When the Judicial Council recommended the amendment to K.S.A. 59-2136(d), it noted that the advisory committee, in developing its recommendation, had reviewed a similar provision in the Indiana statutes. See Minutes of the House Judiciary Committee, February 12, 1991, Attachment 1. The statute referred to by the committee, Ind. Code § 31-3-1-6(g)(1) (1990 Supp.) (currently Ind. Code § 31-19-9-8 [1998]), provides that a natural parent's consent for a stepparent adoption is not required where the parent without justifiable cause fails to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so for a period of 1 year. The Indiana court has consistently held that the provisions regarding communication and failure to support are framed in the disjunctive, thus demonstrating that either of the two criteria is sufficient to establish that the adoption without parental consent may move forward. See, e.g., In re Adoption of J.P., 713 N.E.2d 873, 875 (Ind. App. 1999); In re Adoption of Augustyniak, 505 N.E.2d 868, 870, n.3 (Ind. App. 1987); Matter of Adoption of Ryan L., 435 N.E.2d 624, 626 (Ind. App. 1982).

### Discussion

The stepfather asserts that when amending K.S.A. 59-2136, the legislature carefully considered the effect and implications of the lack of child support. He argues that the statute establishes that both support and visitation, contacts, communications, or contributions are aspects of parental duties, and failure in either aspect in stepparent adoption may result in termination of the natural parent's rights.

The stepfather's interpretation of K.S.A. 59-2136(d) is contrary to our holding in K.J.B. K.J.B. was decided in 1998, and the leg-

islature has not amended K.S.A. 59-2136(d) to correct a misinterpretation of the statute. When the legislature fails to modify a statute to avoid a standing judicial construction of that statute, the legislature is presumed to agree with the court's interpretation. See *State v. Rollins*, 264 Kan. 466, 474, 957 P.2d 438 (1998). If we have misconceived the legislature's intent, we invite a clear expression.

*K.J.B.*'s determination that a parent must fail to provide *both* "love and affection" and financial support was compelled by the fact that " '[b]asic parental rights are fundamental rights protected by the Fourteenth Amendment to the Constitution of the United States. The right to be the legal parent of a child is one of these rights, which cannot be abrogated except for compelling reasons. See *Quilloin v. Wolcott*, 434 U.S. 246, 54 L. Ed. 2d 511, 98 S. Ct. 549 *reh. denied*, 435 U.S. 918 (1979). . . .' " 265 Kan. at 101 (quoting *In re Adoption of C.R.D.*, 21 Kan. App. 2d at 98). In *Quilloin*, the Court noted that it had previously declared an Illinois statute unconstitutional which denied an unwed father the right to a hearing to determine if he was qualified to assume parental duties before the State took custody of the father's children. See *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1971). However, the *Quilloin* Court distinguished its case from *Stanley* and upheld a Georgia statute that denied an unwed father the right to veto the adoption of his child by a stepparent.

The duties of a parent addressed by the statute include not only the common-law duty of financial support, but also the "natural and moral duty of a parent to show affection, care and interest toward his or her child." *In re Adoption of Wilson*, 227 Kan. 803, 805, 610 P.2d 598 (1980); see *In re Sharp*, 197 Kan. 502, 508, 419 P.2d 812 (1966). In making a determination under K.S.A. 59-2136(d) of whether consent of a parent to an adoption is unnecessary due to failure to assume parental duties, neither the best interests of the child nor the fitness of the nonconsenting parent are controlling factors, as they would be in a proceeding to sever parental rights pursuant to K.S.A. 38-1581 *et seq. In re Adoption of Wilson*, 227 Kan. at 806.

Generally speaking, adoption statutes are strictly construed in favor of maintaining the rights of natural parents in those cases

where it is claimed that, by reason of a parent's failure to fulfill parental obligations as prescribed by statute, consent to the adoption is not required. In making a determination in an adoption proceeding of whether a nonconsenting parent has failed to assume his or her parental duties for 2 consecutive years, all the surrounding circumstances are to be considered. Although a child can be adopted without the consent of one of the natural parents, the facts warranting an exception as prescribed by statute must be clearly proven. *In re Adoption of S.E.B.*, 257 Kan. at 273.

The "ledger" model applied by the *K.J.B.* court is not entirely based on K.S.A. 59-2136(d) in that the statute does not expressly delineate "love and affection" as a parental duty. The statute refers to "visitations, contacts, communications or contributions" and states that if those are incidental only, the court may disregard them in determining whether a father's consent is required. Therefore, if parental duties as outlined in K.S.A. 59-2136(d) can be charted on a "ledger," "visitations, contacts, communications, or contributions" occupy one side, and "child support as required by judicial decree" occupies the other.

Here, as in *K.J.B.*, although the father failed to visit, contact, or communicate with the child, he paid the child's support for 2 years preceding the filing of the petition for adoption to escape being held in contempt. As Chief Justice Holmes stated in *In re Adoption of F.A.R.*, 242 Kan. at 235:

"It should also be noted that the best interests of the child, which is the paramount consideration in custody matters, is not controlling in determining the statutory issue of whether a natural parent has failed to assume parental duties. We have no doubt that the best interests of the [child] in this case weighs heavily in favor of the adoption. It is unfortunate that this father apparently has little concern for the [child's] welfare and instead has chosen to stand upon his legal rights, but under our statutory scheme of adoption he has that choice."

Here, the father did provide a substantial portion of the child support required by judicial decree; therefore, the rebuttable presumption of failure to assume parental duties does not arise.

## CHILD SUPPORT PAYMENTS MADE IN RESPONSE TO A CONTEMPT ORDER

Under K.S.A. 59-2136(d), whether a parent has refused or failed to assume parental duties for 2 years prior to filing an adoption

petition is a question of fact, reviewed on appeal only to determine whether the decision is supported by substantial competent evidence. *In re Adoption of A.J.P.*, 24 Kan. App. 2d 891, 892-93, 953 P.2d 1387 (1998). In determining whether the parent's efforts constitute an assumption of parental duties, all surrounding circumstances must be considered. See *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 100, 897 P.2d 181 (1995).

It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

Do the support payments made by a father in response to a contempt order constitute an assumption of parental duties under K.S.A. 59-2136(d)? The stepfather contends that the use of the word "assume" in the statute connotes a voluntary action, and payments made in response to a contempt order are not voluntary.

First, the stepfather takes issue with the trial court's finding that the father paid 86 percent of his accruing child support interest in the 2 years next preceding the filing of the petition. The stepfather calculates father's payment percentage as 64 percent. The difference lies in the trial court's failure to include the arrearage and payments made on the arrearage. Here, the difference is not significant. In *C.R.D.*, the Court of Appeals found that the payment of 23 percent of the child support obligation was sufficient. In reaching this conclusion, the Court of Appeals found that "substantial," as that term is used in K.S.A. 59-2136(d), assumes more than nominal or casual efforts; it means something "of real worth and importance; of considerable value." 21 Kan. App. 2d 94, Syl. ¶¶ 4, 5. Based on *C.R.D.*, the district court's finding that the nat-

ural father provided a substantial amount of court-ordered support would be supported by the record.

On the other hand, if the legislature intended compliance with child support orders to be defined in terms of performance, substantial performance would be accomplished where a good faith attempt to pay support does not precisely meet the terms of the support order, but the essential purpose of the court-ordered child support is nevertheless accomplished.

The father provided only incidental visitations, contacts, communications, or contributions during the 2 years prior to the filing of the petition for adoption. He paid a substantial portion of his child support obligation. The child support payments were not voluntary but in response to a contempt order, for the sole purpose of staying out of jail.

K.S.A. 59-2136(d) does not distinguish between voluntary and involuntary support or define the amount of child support that constitutes a substantial portion of court-ordered support. Under the circumstances, the father did not fail to assume the duties of a parent as required by K.S.A. 59-2136(d). The district court's denial of the petition for adoption is affirmed.

Affirmed.

McFARLAND, C.J., and ABBOTT, J., concur in the result.