(7 P.3d 306)
No. 83,450

In the Matter of the Adoption of R.W.B. and C.R.B.,
Minor Children.

Opinion filed May 12, 2000.

*Thomas D. Arnhold*, of Thomas D. Arnhold, P.A., of Hutchinson, for appellant.

*Charles H. Herd*, of Greensburg, for appellee.

Before KNUDSON, P.J., GREEN, J., and BUCHELE, S.J.

GREEN, J.: The natural father of R.W.B. and C.R.B., minor children, appeals from a judgment of the trial court granting the stepfather the right to adopt the children. On appeal, the father contends that the trial court erred in determining that his consent to the adoption was unnecessary. Specifically, the father claims the trial court erred in finding that he failed to assume the duties of a parent during the 2 years before the filing of the adoption petition. We disagree and affirm the judgment of the trial court.

In terminating the father's parental rights, the trial court made certain findings of fact. Consequently, our scope of review with regard to those findings is narrow. In an adoption case involving a challenge to the sufficiency of the evidence, the Kansas Supreme Court explained our standard of review as follows:

"When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the duty of the appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the findings. An appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances the reviewing court must review the evidence in the light most favorable to the party prevailing below. [Citation omitted.]" *Aslin v. Seamon*, 225 Kan. 77, 78, 587 P.2d 875 (1978).

The mother and father of R.W.B., age 10, and C.R.B., age 12, were divorced on June 13, 1990. The mother was awarded residential custody of the children, and the father was ordered to pay $75 per week for child support and provide health insurance for the children. On July 9, 1997, the stepfather, with the consent of the mother, filed a petition for adoption of the two children. The adoption proceeding was heard before a district magistrate judge who agreed with the stepfather that the father's consent to the adoption was unnecessary because the father had failed or refused to assume the duties of a parent for the 2 years before the filing of the adoption petition.

The father appealed the case to the trial court. The parties agreed to let the trial court decide the appeal based on the record from the proceedings below. The trial court found that the father did not make the child support payments as ordered. The trial court further determined that the father was to pay child support of $75 per week.

In the critical 2-year period, the father had paid $2,775 in child support when $7,800 ($75 x 104 weeks) was due. However, including time periods before the 2-year period, the father owed approximately $20,000 in child support arrearages. Moreover, only $525 of the $2,775 in child support payments made during the critical 2-year period was voluntarily paid. Most of the child support payments were the result of an order of income withholding imposed after the Texas Attorney General brought a contempt proceeding against the father. For 25 weeks, $90 was involuntarily withheld from the father's wages and applied to his child support obligation. The income withholding order resulted in a total of $2,250 ($90 x 25 payments) in child support. The income withholding order netted only 25 payments because the father changed

jobs and the order did not follow him to his new position. The trial court found that the child support payments made under the income withholding order during the 2-year period preceding the petition for adoption were made on the arrearage.

The trial court also found that the father enjoyed good physical and mental health during the 2 years preceding the filing of the adoption petition and was not hospitalized or incarcerated. Moreover, the father was gainfully employed, earning at least $24,000 per year, and was financially able to pay child support. The father's explanation for his failure to pay more child support was that he was "pissed" because of perceived problems in exercising his visitation rights.

The trial court also found that because of the father's self-described emotional state, he had no personal contact with either of the children since 1991. Moreover, the father did not contact the children via telephone in the 2 years preceding the filing of the adoption petition. The father's current wife sporadically sent the children cards and gifts at the father's behest.

Additionally, the trial court found that the father had medical insurance coverage for the children but did not make it available by providing membership cards or claim forms to the mother. Moreover, he made no inquiry of the children's health, education, or activities within the 2-year period preceding the filing of the adoption petition.

Based on these findings, the trial court held that the father's consent to the adoption of the children by the stepfather was unnecessary because the father had failed to assume parental responsibilities in the critical 2-year period.

The issue before this court is not the father's parental fitness. See *In re Adoption of Wilson*, 227 Kan. 803, Syl., 610 P.2d 598 (1980). Rather, we are to determine whether the father has performed certain duties. The controlling Kansas statute is K.S.A. 59-2136(d):

"In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the

consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

Initially, K.S.A. 59-2136(d) sets out the general principle that consent to an adoption is unnecessary if the father has failed or refused to assume parental duties within the 2 years prior to the filing of the adoption proceeding. The statute creates a rebuttable presumption of failure to assume parental responsibilities when there have been no substantial financial contributions, as required by judicial decree, made by a parent to his or her children within the 2-year period. The presumption, however, can be rebutted, but incidental visitations, contacts, communications, and contributions can be disregarded.

In the instant case, the trial court applied the rebuttable presumption that the father had failed to assume his parental responsibilities because he did not pay a substantial portion of his child support obligation. Specifically, the trial court found that all of the child support payments the father made in the critical 2-year period were applied to the arrearage the father accumulated. In making this finding, the trial court disregarded an affidavit from the Texas Attorney General which stated that only $15 of the garnished payments went to the arrearage and $75 was applied to the current payments. The trial court indicated that it believed that it could not consider the affidavit because the case was to be decided on the record from the magistrate proceeding, and the affidavit was not part of the record. However, the affidavit is part of the record on appeal, and we will consider it in order to provide maximum protection of the father's parental rights.

The affidavit from the Texas Attorney General clearly states that $15 of the payments from income withholding went to the arrearage and $75 to the current payments. These payments, totaling $375 ($15 x 25 payments), did not contribute towards the support obligation incurred in the critical 2-year period and will not be considered in determining whether the father paid a substantial amount of support in the 2-year period. After discounting the payments that went to the arrearage, the father paid $2,400 ($2,775 - $375), or 31 percent of what was owed, toward his child support obligation in the critical 2-year period.

The father argues that his payment of approximately 31 percent of the child support that was ordered constitutes payment of a substantial portion of the ordered support. To bolster his argument, the father cites *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 99, 897 P.2d 181 (1995), which held that payment of approximately 23 percent of the ordered child support and medical insurance coverage constituted "substantial efforts and assumption of parental duties."

The trial court determined that no evidence existed that the father voluntarily made his court-ordered child support payments during the critical 2-year period. The trial court further determined that because the father's child support payments were made under the threat of incarceration, those involuntary payments failed to show any expression of parental concern for the well-being of his children. Finally, the trial court determined that "[t]hose [involuntary] payments did not result from a positive parental effort."

This issue was recently addressed by our Supreme Court in *In re Adoption of B.M.W.*, 268 Kan. 871, 2 P.3d 159 (2000). The *B.M.W.* court noted that "K.S.A. 59-2136(d) does not distinguish between voluntary and involuntary support" to determine whether a parent has paid a substantial amount of his or her court-ordered support. 268 Kan. at 884. The court considered both the father's voluntary and involuntary payments in holding that the father paid a substantial portion of the child support.

Based on the plain language of K.S.A. 59-2136(d) and our Supreme Court's recent decision in *In re Adoption of B.M.W.*, we hold that the father's child support payments made under an in-

voluntary income withholding order should be included in calculating whether he has paid a substantial portion of the ordered child support.

This, however, does not end our analysis. We must now determine whether the father's payment of approximately 31 percent of the child support that was ordered, coupled with his complete failure to provide medical insurance, constitutes payment of a substantial portion of support.

The *B.M.W.* court stated that *C.R.D.* held that the payment of 23 percent of the court-ordered child support was sufficient to rebut the presumption under K.S.A. 59-2136(d). Without expressly saying so, the *B.M.W.* court suggests that the payment of 23 percent or more of court-ordered child support is sufficient to rebut the preceding presumption: "Based on *C.R.D.*, the district court's finding that the natural father provided a substantial amount of court-ordered support would be supported by the record." 268 Kan. at 883-84. If the *B.M.W.* court has determined that the payment of 23 percent or more of court-ordered child support is sufficient to rebut the presumption, our analysis ends because the payment of 31 percent of court-ordered child support would clearly exceed the 23 percent figure in *C.R.D.* Nevertheless, if the *B.M.W.* court has based its holding on *C.R.D.*, which it seems to have done, our case is distinguishable from *C.R.D.*

The provision of medical insurance coverage is the distinguishing factor between this case and *C.R.D.* In *C.R.D.*, the court noted:

"We concede that a substantial amount of the ordered child support was not paid. However, in the instant case, as a matter of law, it cannot be said that the $1,100 *and medical insurance coverage* do not constitute substantial efforts and assumption of parental duties . . . ." (Emphasis added.) 21 Kan. App. 2d at 99.

Moreover, in his concurring opinion, Judge Lewis concluded "that in this case the support [$1,100] *and medical insurance provided* were substantial enough to protect the natural relationship between father and child." (Emphasis added.) 21 Kan. App. 2d at 103 (Lewis, J., concurring). Clearly, the *C.R.D.* court held that payment of only 23 percent of ordered child support constitutes a *failure* to pay a substantial amount of support. It was not until the

medical insurance was added into the calculation that C.R.D.'s father's actions constituted substantial efforts and assumption of parental duties.

Unlike *C.R.D.*, the father in the present case failed to furnish the court-ordered medical insurance. As a result, the *C.R.D.* holding cannot be easily applied to the present case. Even though the father here paid a greater percentage of support than the father in *C.R.D.*, the 8 percent difference in payment between the two cases does not make up for the father's failure to provide medical insurance for his children. The medical insurance coverage would have been invaluable to the children. Notoriously, children get sick and injured. The cost of seeking medical treatment can be prohibitive to those without insurance coverage. As a result, we cannot say that payment of 31 percent of ordered child support constitutes a substantial amount, especially when the father had the financial ability to comply with the child support order. The father's average payment of $23.08 per week towards his $75 per week child support obligation does not meet the substantial portion of child support requirement as set out by K.S.A. 59-2136(d). The amount of $23.08 per week, or only $11.54 per child, is totally inadequate for the proper physical, mental, and emotional development of the father's two children.

We find that a father has "failed to provide a substantial portion of the child support" as provided in K.S.A. 59-2136(d) when he fails to pay at least 69 percent of court-ordered support. As a result, the rebuttable presumption that the father failed and refused to perform his parental duty of providing support to his children is applicable.

Under K.S.A. 59-2136(d), the presumption that a parent failed to perform parental duties can be rebutted by certain evidence. In the instant case, the presumption is not rebutted. First, the trial court found that the father had the ability to pay the ordered child support. The father was not incarcerated, was in good physical and mental health, and was earning an adequate income.

The father attempts to justify his failure to pay child support by insisting that he did not pay because he was upset with problems relating to visitation with the children. As noted by the stepfather,

however, it was not reasonable for the father to sit back and make no attempt to enforce his visitation rights if he felt they were being obstructed. Moreover, the mother and stepfather insist that they did not interfere with the father's visitation. They permitted the children to receive the sporadic cards and gifts that were sent to them on behalf of their father.

The father had absolutely no personal contact with the children in the critical 2-year period, whether in person or via telephone. Nor did the father inquire as to the children's health, education, or activities. Moreover, the father did not personally send cards or gifts to the children. Although the children did receive correspondence from their father, these items were selected and sent by the father's current wife.

K.S.A. 59-2136(d) allows the court to disregard incidental visits, contacts, communications, or contributions. "Incidental" has been defined in this context as "casual, of minor importance, insignificant, and of little consequence." *In re Adoption of McMullen*, 236 Kan. 348, Syl. ¶ 1, 691 P.2d 17 (1984). The trial court correctly disregarded the father's contacts with his children because the contacts were incidental.

We find in the instant case that the father failed to provide a substantial portion of the ordered child support and medical insurance coverage. Moreover, the father failed totally in his responsibilities to provide even a minimum of parental love and affection, care, and interest in his children. As a result, the trial court correctly determined that the father failed to assume the duties of a parent during the critical 2-year period and that the father's consent to the adoption was unnecessary.

Affirmed.