(163 P.3d 334)
No. 97,546

In the Matter of the Adoption of G.L.V. and M.J.V., Children under the Age of 18 years.

Opinion filed July 20, 2007.

*John W. Fresh* and *Larry R. Mears*, of Larry R. Mears, Chartered, of Atchison, for appellants.

*T.L.V.*, appellee pro se natural father.

Before MALONE, P.J., GREEN and MARQUARDT, JJ.

MALONE, J.: E.L.D. (Stepfather) appeals the district court's denial of his petition for stepparent adoption of two minor children, G.L.V. and M.J.V. T.J.D. (Mother) consented to the adoption, but T.L.V. (Father) did not consent. Stepfather asked the district court to grant the adoption without Father's consent pursuant to K.S.A. 2006 Supp. 59-2136(d), alleging Father had failed or refused to assume the duties of a parent for 2 consecutive years preceding the filing of the petition for adoption. On appeal, Stepfather claims the district court misinterpreted K.S.A. 2006 Supp. 59-2136(d) and failed to consider the best interests of the children in determining whether the adoption should have been granted. We disagree with Stepfather's contentions and affirm the district court's decision to deny the adoption.

G.L.V. and M.J.V. are twin brothers, born on October 17, 1994. Mother and Father were never married and only lived together briefly. In 1994, Mother filed a paternity action in Brown County District Court. The district court determined paternity and ordered Father to pay child support. Approximately 3 weeks after the children were born, Father left and did not see the children again until 1997. In 1997, the district court awarded Father visitation with the children during weekends, but Father only visited the children two or three times. Between 1997 and 2005, Father did not have any contact or relationship with his children. However, the children did develop a relationship with Father's parents and other members of his family.

Although Father was ordered to pay child support in 1994, his initial payments were sporadic. However, since April 2003, Father has had regular employment and has consistently been paying monthly child support obligations through an income withholding order. Father currently pays $366 per month child support for

G.L.V. and M.J.V., and he also covers the children on his health insurance plan. From April 2003 through June 2006, Father paid $21,003.86 of an obligation of $14,274, with the overage being applied to the arrearage.

In March 2004, Mother married Stepfather. On June 13, 2006, Stepfather filed a petition for adoption of G.L.V. and M.J.V. with the Atchison County District Court. In the petition, Stepfather asked the district court to grant the adoption without Father's consent because Father had almost no contact with the children for 9 years and had never voluntarily paid child support.

The district court held an evidentiary hearing. Father testified he was now married and has three children and a stepchild with his current wife. Father acknowledged he failed to stay in touch with G.L.V. and M.J.V., but he claimed that Mother took every step possible over the years to interfere with his visitation rights. According to Father, at one point the sheriff's office told him he would need to go back to court to resolve the visitation problems, but he did not have the financial means to do so.

Stepfather did not testify at the hearing. However, Mother testified and denied that she ever prevented Father from visiting the children. She testified that her husband was the only father figure G.L.V. and M.J.V. have ever known. According to Mother, Stepfather regularly helps the boys with their homework, and he actively participates with them in their scouting and sporting events.

The district court took the matter under advisement and filed a memorandum opinion denying the adoption. The district court determined it could not grant the adoption without Father's consent because Father had provided substantial financial support for the children in the 2 years preceding the filing of the adoption petition. Stepfather timely appeals.

Stepfather claims the district court erred in denying his petition for adoption of G.L.V. and M.J.V. Specifically, Stepfather argues the district court misinterpreted K.S.A. 2006 Supp. 59-2136(d) and failed to consider the best interests of the children to be the "overriding factor" in determining whether the adoption should have been granted. Stepfather acknowledges that under the statute and case law prior to 2006, Father's consent to the adoption would have

been necessary because Father had provided substantial financial support to the children in the 2 years preceding the filing of the petition. However, in 2006, the legislature amended 59-2136(d) by adding a provision that the court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted. According to Stepfather, this changed the manner in which 59-2136(d) should be construed.

Stepfather's argument requires this court to interpret K.S.A. 2006 Supp. 59-2136(d). The interpretation of a statute is a question of law over which this court has unlimited review. An appellate court is not bound by the district court's interpretation of a statute. *In re Adoption of S.J.R.*, 37 Kan. App. 2d 28, 32-33, 149 P.3d 12 (2006).

" 'The fundamental rule of statutory construction is to ascertain the legislature's intent. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. [Citation omitted.]' " *In re S.J.R.*, 37 Kan. App. 2d at 33.

Also, when it is claimed that consent to an adoption is not required by reason of a parent's failure to fulfill parental obligations, adoption statutes are strictly construed in favor of maintaining the rights of natural parents. *In re Adoption of S.E.B.*, 257 Kan. 266, 273, 891 P.2d 440 (1995).

Prior to 2006, K.S.A. 59-2136(d) stated:

"In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition

for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

K.S.A. 59-2136(d) provides that in a stepparent adoption, the consent of the natural parent must be given to the adoption unless the parent has failed or refused to assume the duties of a parent for 2 consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. This "parental duties" test was interpreted by the Kansas Supreme Court in *In re Adoption of K.J.B.*, 265 Kan. 90, 959 P.2d 853 (1998). In *In re K.J.B.*, the only financial support the father provided to his children came from social security benefits, and the father had only incidental contacts with the children over several years. The district court granted the stepparent adoption without the father's consent, finding that the father had failed or refused to assume his parental duties pursuant to K.S.A. 59-2136(d). 265 Kan. at 92-94.

The Kansas Supreme Court reversed. The court determined that, under K.S.A. 59-2136(d), a parent's duties include both the duty of financial support and the natural and moral duty to show affection, care, and interest toward his or her child. *In re K.J.B.*, 265 Kan. 90, Syl. ¶ 3. The court discussed these parental duties by comparing them to a "ledger" in which the love and affection parental duty and the financial support parental duty occupy separate sides of the ledger. See *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 897 P.2d 181 (1995) (Lewis, J., concurring). The court strictly construed the stepparent adoption statute in favor of maintaining the rights of natural parents and concluded that K.S.A. 59-2136(d) required a failure on both sides of the ledger before a court could grant the adoption without the consent of the natural parent. 265 Kan. at 101-02.

The ledger approach was later confirmed by the Supreme Court in *In re B.M.W.*, 268 Kan. 871, 2 P.3d 159 (2000). In *In re B.M.W.*, the stepfather argued the father's consent to an adoption was unnecessary because the father had failed to provide affection and care for the child and had paid court-ordered child support only

after a threat of contempt proceedings. Nevertheless, the district court found the father had paid a substantial portion of his child support obligation in the 2 years preceding the filing of the adoption petition; thus, the district court refused to grant the adoption without the father's consent. 268 Kan. at 872-74.

The Kansas Supreme Court affirmed. The court reviewed the legislative history of K.S.A. 59-2136(d). Relying on *In re K.J.B.*, the court upheld the ledger approach and confirmed that a parent must fail both the "love and affection" side of the ledger and the "financial support" side of the ledger before an adoption can be granted without the parent's consent. 268 Kan. at 881. The court determined that K.S.A. 59-2136(d) does not distinguish between voluntary and involuntary payments in assessing whether a parent has financially supported a child. 268 Kan. at 884. The court also noted that "neither the best interests of the child nor the fitness of the nonconsenting parent are controlling factors" under K.S.A. 59-2136(d). 268 Kan. at 881.

In 2006, the legislature enacted House Bill 2665, which added the following sentence to the end of K.S.A. 59-2136(d): "The court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted." K.S.A. 2006 Supp. 59-2136(d); L. 2006, ch. 22, sec. 1. The amended statute went into effect on March 23, 2006, and, thus, applied in this case. L. 2006, ch. 22, sec. 3. This case focuses on the effect of the 2006 amendment to the statute.

At the adoption hearing, Stepfather argued that under K.S.A. 2006 Supp. 59-2136(d), the court should not only consider the best interests of G.L.V. and M.J.V., but such consideration should be the overriding factor in determining whether to grant the adoption. In interpreting the language added by H.B. 2665, the district court focused on the word "may" and found that the amendment granted a district court discretion to consider the best interests of the child, but did not make this the overriding factor in determining whether to grant a stepparent adoption. The district court concluded that the precedents of *In re K.J.B.* and *In re B.M.W.* dictated that the adoption petition be denied and that the 2006 statutory amendment did not change this outcome.

On appeal, Stepfather offers two possible interpretations of the amended statute. First, Stepfather argues the statute allows a district court to grant a stepparent adoption without the natural parent's consent if two of the following three factors are present: (1) the natural parent failed to visit or communicate with the child; (2) the natural parent failed to provide a substantial part of the child's support; or (3) *the stepparent adoption is in the child's best interest* or the natural parent is unfit. Second, and in the alternative, Stepfather argues the best interests of the child is the overriding factor in determining whether to grant a stepparent adoption.

In deciding the case, the district court determined that K.S.A. 2006 Supp. 59-2136(d) was ambiguous and turned to the statute's legislative history to interpret the effect of the 2006 amendment. In its memorandum decision, the district court found that the original version of H.B. 2665 stated that a district court "shall" consider the best interests of the child in a stepparent adoption. The district court also found that the House Judiciary Committee amended the bill to change the word "shall" to "may." The district court relied on this change in finding that the legislature did not intend to make the best interests of the child the overriding factor in a stepparent adoption.

Contrary to the district court's findings, the original version of H.B. 2665 did not amend K.S.A. 59-2136(d). Instead, it only amended 59-2136(h), which is a general provision that sets forth the factors a district court should consider when determining whether to terminate parental rights in an adoption case. See *In re S.J.R.*, 37 Kan. App. 2d at 36-37 (K.S.A. 2006 Supp. 59-2136[d] is the controlling subsection in stepparent adoption cases, not subsection [h]). The original version of H.B. 2665 amended 59-2136(h) by adding the following italicized language: "In making a finding *whether parental rights shall be terminated* under this subsection, the court: (1) *Shall consider and weigh the best interest of the child* . . . ." The House Judiciary Committee later amended H.B. 2665 by changing the above-mentioned "shall" in 59-2136(h) to "may" and also by adding the best interests of the child language to 59-2136(d). House J. 2006, p. 1234.

Although the district court's recitation of the legislative history of K.S.A. 2006 Supp. 59-2136(d) was not completely accurate, it was still appropriate for the district court to focus on the word "may" in the amendment to the statute. The legislature clearly intended to allow courts to consider the best interests of the child in adoption cases, as evidenced by its amendments to both subsections (d) and (h) of K.S.A. 59-2136. This appears to have been in response to prior Kansas Supreme Court decisions that indicated that neither the best interests of the child nor the fitness of the nonconsenting parent were controlling factors in a stepparent adoption. *In re B.M.W.*, 268 Kan. at 881; *In re K.J.B.*, 265 Kan. at 95; *In re S.E.B.*, 257 Kan. at 274. However, the amendment does not state that the best interests of the child shall be the *controlling factor* in a stepparent adoption. By adopting the discretionary term "may" instead of the mandatory term "shall," it appears that the legislature did not intend to make the best interests of the child the overriding factor, as Stepfather argues.

We also note that, during the 2006 legislative session, House Bill 2914 was introduced, which would have added the following language to K.S.A. 59-2136(d):

"The failure of a father to provide a substantial portion of the child support because such father has been convicted and is imprisoned shall not be sufficient to rebut such rebuttable presumption. Failure of the father to either provide a substantial portion of the child support as required by judicial decree *or* perform the other duties of a parent shall be sufficient for the court to determine that such father's consent is not required in a stepparent adoption. The court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted." (Emphasis added.)

H.B. 2914 would have allowed a district court to grant a stepparent adoption if the natural parent failed *either* the duty to provide financial support for the child *or* the duty to communicate and visit with the child. In other words, H.B. 2914 would have accomplished the exact result Stepfather is advocating in this appeal. Although this bill was introduced and referred to the House Judiciary Committee, it died in committee. House J. 2006, pp. 1218, 1222, 2543. The fact that the legislature passed H.B. 2665,

rather than H.B. 2914, further supports the interpretation that the legislature did not intend to change the parental duties test in determining whether a stepparent adoption can be granted without the natural parent's consent.

As noted above, the Kansas Supreme Court has consistently held that to grant a stepparent adoption without the natural parent's consent under K.S.A. 59-2136(d), the district court must find that the natural parent failed to fulfill his or her parental duties by both failing to provide financial support to the child and failing to communicate and visit with the child. *In re B.M.W.*, 268 Kan. at 881; *In re K.J.B.*, 265 Kan. at 100-02; see also *In re S.E.B.*, 257 Kan. at 274 (courts are required to take into consideration the period of time father was incarcerated in assessing whether father has provided financial support). This judicial construction of the stepparent adoption statute has been in place for several years, yet when the legislature amended the statute in 2006, it did not amend the section addressing consent and parental duties. "When the legislature fails to modify a statute to avoid a standing judicial construction of that statute, the legislature is presumed to agree with the court's interpretation." *In re B.M.W.*, 268 Kan. at 881.

A plain reading of K.S.A. 2006 Supp. 59-2136(d) does not support Stepfather's argument on appeal. The statute provides that "the consent of such father *must be given* to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent." (Emphasis added.) The language added by H.B. 2665 merely states that the district court "may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted." This language does not change the parental duties test delineated earlier in the subsection. Simply put, the court may consider the best interests of the child and the fitness of the nonconsenting parent in a stepparent adoption case, but it can only grant the adoption without the natural parent's consent if the natural parent has failed to fulfill his or her parental duties under the statute.

Even if K.S.A. 2006 Supp. 59-2136(d) is construed as requiring the court to consider the best interests of the child and the fitness of the nonconsenting parent in a stepparent adoption, the record indicates the district court did, in fact, consider these factors in this case. In particular, the district court's memorandum decision stated:

"No argument has been made that the father is unfit. As noted earlier, the father has married and has three children and a stepchild with his current wife. No evidence has been introduced to indicate a lack of care for these children.

*"Consideration of the best interest of the children does not clearly favor one parent over the other.* Each attorney made strong arguments on behalf of their client. The father noted that it was important for the children to have contact with extended family members and would like for the children to get to know their siblings and to continue the relationship that they have established with his parents and other members of his family. The petitioner argued that it is important for the children to have the stability of a known father figure and that he has been the one to serve in that capacity. The petitioner is the only father that the boys have known. It was probably best stated by Brenda Vaughn that both parents have the children['s] best interest at heart, they just differ as to what those interest[s] are.

"The Court is aware of the emotional investment that both parents have in the outcome of this case and that an appeal would be possible by the party that the Court rules against. So that the record is complete should this case be appealed, the Court notes that the father is African American and the mother and the petitioner are Caucasian. Severing ties with the father not only severs ties with his family but also may sever cultural ties." (Emphasis added.)

The district court did more than consider the "financial support" ledger and the "love and affection" ledger as required by *In re K.J.B.* and *In re B.M.W.* The district court also considered Father's fitness as a parent, the children's emotional stability, the children's bonding with other family members, and the children's cultural ties with Father who is African-American. It is clear the district court complied with K.S.A. 2006 Supp. 59-2136(d) and considered the best interests of G.L.V. and M.J.V. in determining whether the stepparent adoption should be granted. Thus, even if the district court misconstrued K.S.A. 2006 Supp. 59-2136(d), its judgment must be upheld as long as it was supported by substantial competent evidence. An appellate court does not weigh the evidence or pass on the credibility of witnesses and must review the evidence

in the light most favorable to the party prevailing below. *In re Adoption of R.W.B.*, 27 Kan. App. 2d 549, 550, 7 P.3d 306, *rev. denied* 270 Kan. 898 (2000).

It is difficult to ascertain exactly what the legislature was trying to accomplish with the 2006 amendment to the stepparent adoption statute. If the legislature was attempting to abrogate the "two-sided ledger" parental duties test enunciated by the Kansas Supreme Court in *In re K.J.B.* and *In re B.M.W.*, it failed to accomplish this goal. The language establishing the parental duties test, as construed by the court, has not been stricken from the statute. By tacking on the 2006 amendment, the legislature has made the statute more difficult for courts to apply. On the one hand, the father's consent *must be given* to a stepparent adoption unless the father has failed to assume his parental duties for 2 consecutive years immediately preceding the filing of the petition for adoption. These duties include both financial support and love and affection. On the other hand, the court *may consider* the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted. It is difficult to reconcile these inconsistent provisions.

K.S.A. 2006 Supp. 59-2136(d) needs further clarification from the legislature. If the legislature intends that a natural parent's consent for a stepparent adoption is not required if the natural parent fails to provide *either* financial support *or* love and affection for 2 consecutive years immediately preceding the filing of the petition for adoption, this should be clearly stated. Likewise, if the legislature desires the best interests of the child to be the *controlling factor* in a stepparent adoption, it can easily say so. As long as the language remains unclear, however, courts shall continue to strictly construe the statute in favor of maintaining the rights of natural parents. *In re S.E.B.*, 257 Kan. at 273.

In summary, we interpret the 2006 amendment to K.S.A. 59-2136(d) to mean just what it says. The court *may* consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted. However, the amendment does not abrogate the parental duties test previously enunciated by the Kansas Supreme Court in *In re*

*K.J.B.* and *In re B.M.W.* The consent of the natural parent must be given to the adoption unless the natural parent has failed or refused to assume the duties of a parent for 2 consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. This requires a failure on both the "love and affection" side of the ledger and the "financial support" side of the ledger before a court can grant a stepparent adoption without the consent of the natural parent. Here, Father had provided substantial financial support for G.L.V. and M.J.V. in the 2 years preceding the filing of the petition for adoption. Thus, the district court did not err in denying Stepfather's petition for adoption without Father's consent.

Affirmed.

MARQUARDT, J.: I respectfully dissent from the majority opinion. In 1991, K.S.A. 59-2136(d) read, *inter alia:*

"In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent." K.S.A. 1991 Supp. 59-2136(d).

The statute focused on financial support and disregarded all other factors. The legislature was alerted to problems that arose when using this financial standard alone in ruling on stepparent adoptions. In *In re Adoption of S.E.B.,* 257 Kan. 266, 274, 891 P.2d 440 (1995), the court stated:

"There is substantial evidence to support the trial court's determination that it was in the best interests of the children that they remain in the home of Stepfather. The best interests of the children, however, is not the standard in deciding this adoption. The best interests of the children, which is the paramount consideration in custody matters, is not controlling . . . ."

In 2006, the legislature amended K.S.A. 2006 Supp. 59-2136(d) to include:

"The court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted."

We do not have an incarcerated father as was the case in *In re Adoption of S.E.B.*; however, we do have a Father who was not married to Mother, did not live with Mother during her pregnancy, provided no support for Mother during her pregnancy, and has not seen the children in 9 years.

In mid-October 1994 when the children were born, the parents lived together for 3 weeks, then Father disappeared. In 1994, Mother sued for paternity and child support. The trial court determined Father's paternity and ordered Father to pay $184 per month child support and also ordered visitation for Father. Father appeared at the paternity hearing in 1994, but did not attempt to see the children.

In 1997, Father's parents took Mother to court to get visitation. Father appeared at this hearing with an attorney and was granted weekend visitation, which he exercised for 2 or 3 weekends right after the order was entered. The last time Father has seen G.L.V. and M.J.V. was in 1997. Father claims that he carried health insurance on the children which covers himself, his wife, and the 4 children who live with him. Mother was never notified that Father was carrying health insurance on G.L.V. and M.J.V.

Father claims that he was denied visitation. However, Father never took any legal steps to pursue his visitation rights. Father's mother sees G.L.V. and M.J.V. regularly and Father testified that he has been in regular contact with his mother. He claims that his mother never told him where the children lived. Father moved to Washington state in 2000 and returned to Kansas in 2005.

In June 2006, Mother's husband, E.L.D., filed a petition to adopt G.L.V. and M.J.V. Father filed no answer to this petition; however, he appeared at the hearing and said he objected to the adoption. The court, in rendering its opinion in the adoption proceeding, cited *In re Adoption of B.M.W.*, 268 Kan. 871, 2 P.3d 159 (2000), and stated: "On one side of the ledger is the 'love and affection' shown by the natural parent while the other side tracks the financial support provided in the two years prior to the filing

of the petition." The court in *B.M.W.* stated that "neither the best interests of the child nor the fitness of the nonconsenting parent are controlling factors, as they would be in a proceeding to sever parental rights." 268 Kan. 871, Syl. ¶ 2.

*B.M.W.* was decided 6 years before K.S.A. 2006 Supp. 59-2136(d) was amended to add the consideration of the best interests of the child. The trial court in this case stated that father "fails miserably the 'love and affection' test. He has had no contact or communication with these children for nine years."

It is E.L.D. who has been the father to these children. E.L.D. has helped with their homework, was involved with their scouting, and coached their football, baseball, and basketball teams.

Father showed no interest in anything to do with these children until the adoption proceeding was filed; even then he failed to file a brief but did appear at the hearing. There is no evidence in the record on appeal that Father made any attempts in 9 years to see his children other than his assertion that he contacted a couple of county sheriffs to obtain their help. Mother has not kept Father from seeing these children. She has always been listed in the phone book and Father's mother has always known where she lived.

The majority claims this is a case of statutory interpretation. " 'The fundamental rule of statutory construction is to ascertain the legislature's intent . . . . When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be.' [Citation omitted.]" *In re Adoption of S.J.R.,* 37 Kan. App. 2d 28, 33, 149 P.3d 12 (2006). The majority suggests that the legislature used the word "may" rather than "shall," meaning that the court is not required to consider the best interests of the children. The question then is, why did the legislature include the best interest standard in the statute if the court is free to completely disregard its consideration? It is clear the legislature now intends that the trial court has the ability to consider the best interests of the children and is not required to merely focus on financial support alone as the criteria for denying an adoption. How can it be in the best interests of these children to deny adoption by the only father they know? Financial support alone can no longer be the

sole criteria. It is true that Father has paid some support; however, for years, he paid nothing until his income tax refunds were garnished.

I consider this a case of abuse of discretion and would reverse the trial court and grant the adoption.