19 Kan. App. 2d 906 (1994)
878 P.2d 865
In the Interest of C.C.
No. 70,470
Court of Appeals of Kansas.
Opinion filed August 5, 1994.
Gary Ellis, of Kansas Department of Social and Rehabilitation Services, of Manhattan, for the appellant.
Wm. Scott Hesse, assistant county counselor, for the appellee.
*907 Before BRISCOE, C.J., PIERRON, J., and CARLOS MURGUIA, District Judge, assigned.
BRISCOE, C.J.:
The Secretary of Social and Rehabilitation Services (SRS) appeals the district court's order that SRS pay the costs of custody and mental health treatment for C.C., a juvenile offender.
C.C. was adjudicated a child in need of care in April 1993, and custody was awarded to SRS in June 1993. SRS placed C.C. in a foster home. Almost immediately after his placement in a foster home, C.C. ran away. C.C. was eventually located in New Orleans and returned to Riley County.
In July 1993, C.C. was charged with vehicle burglaries, felony theft, and misdemeanor theft. C.C. stipulated to the charges and was adjudicated a juvenile offender. By agreement of the parties, C.C. was admitted to St. Francis Academy for a 30-day mental health assessment and treatment program, to be paid for by C.C.'s parents. At the August 1993 dispositional hearing on the juvenile offender case, the court reviewed the discharge summary and psychosocial assessment from St. Francis, which indicated C.C. had a severe drug abuse problem and that long-term inpatient therapy in a Level VI group home for juveniles was strongly recommended. C.C.'s mother testified the family health insurance benefits had been exhausted and they could not afford to pay for more than one week of additional treatment at St. Francis.
The court also heard from an SRS representative who explained that the agency maintains a waiting list to screen juveniles needing Level VI placement. Only three names are allowed on the list at any one time and, in order to get a juvenile on the waiting list, a social worker can call SRS on Tuesdays or Fridays to see if there is an opening. Because there is no pre-waiting list, getting on the Level VI screening list is solely a matter of persistence and luck. Even after making the list, a juvenile can wait up to seven months for placement in a Level VI home.
The district court considered the fact that C.C. was currently in a Level VI facility with the opportunity to remain in treatment if funding could be obtained. The court further considered that, if C.C. was placed in SRS custody, he would be removed from St. Francis and placed in a foster home pending screening for *908 Level VI treatment. In light of C.C.'s serious drug abuse problem and past history of running away, the court found it would be in C.C.'s best interests to remain at St. Francis. The court ordered that C.C. be placed in the custody of St. Francis Academy for purposes of treatment and rehabilitation and further ordered that SRS pay the cost of C.C.'s custody and treatment.
SRS argues when the district court ordered that C.C. be placed in St. Francis, the custody of SRS was terminated and the county, not SRS, became responsible for paying the costs of treatment. The county argues when the Secretary was awarded custody of C.C. at the child in need of care proceeding, SRS became responsible for paying the costs of C.C.'s medical care.
The issue raised is a question of first impression in Kansas. C.C.'s adjudications as a child in need of care and as a juvenile offender are governed respectively by the Kansas Code for Care of Children, K.S.A. 38-1501 et seq., and the Kansas Juvenile Offenders Code, K.S.A. 38-1601 et seq. Which governmental entity is responsible for the costs of C.C.'s custody and mental health treatment depends upon the intent of the Kansas Legislature as expressed in statutes relevant to this question. It is this court's duty to reconcile different statutory provisions to make them consistent, harmonious, and sensible, and to construe the statutes to give effect to legislative intent, as determined from consideration of the entire act. Podrebarac v. Kansas Dept. of Revenue, 15 Kan. App.2d 383, 385, 807 P.2d 1327 (1991).
Following the child in need of care proceeding, C.C. was placed in the custody of the Secretary of SRS. K.S.A. 38-1502(m) defines custody as "the status created by court order or statute which vests in a custodian, whether an individual or an agency, the right to physical possession of the child and the right to determine placement of the child, subject to restrictions placed by the court." K.S.A. 38-1563(e) states: "When the custody of the child is awarded to the secretary: (1) The court may recommend to the secretary where the child should be placed, but the court shall not have the power to direct a specific placement." When there is a conflict between a statute dealing generally with a subject and one dealing specifically with a certain phase of a subject, the specific statute controls unless the legislature intended to make the general act controlling. State v. Reed, 254 *909 Kan. 52, Syl. ¶ 1, 865 P.2d 191 (1993). It is clear that 38-1563(e) addresses a more specific instance of custody than the general definition contained in 38-1502(m). It follows, then, that once custody of a child is awarded to the Secretary, the court is not authorized under the Code for Care of Children to order a specific placement of that child.
The Juvenile Offenders Code places a similar restriction on the court's authority to direct placement of a child who is in the custody of the Secretary. K.S.A. 38-1664(a) provides:
"When a juvenile offender has been placed in the custody of the secretary, the secretary shall notify the court in writing of the initial placement of the juvenile offender as soon as the placement has been accomplished. The court shall have no power to direct a specific placement by the secretary, but may make recommendations to the secretary. The secretary may place the juvenile offender in an institution operated by the secretary, a youth residential facility or a community mental health center. If the court has recommended an out-of-home placement, the secretary may not return the juvenile offender to the home from which removed without first notifying the court of the plan." (Emphasis added.)
Neither the Code for Care of Children nor the Juvenile Offenders Code authorized the district court to order specific placement of C.C. at St. Francis while the child was still in the custody of the Secretary. In making such an order, the court removed C.C. from the custody of SRS. The language used by the court in its journal entry supports the conclusion that the court changed custody of C.C. from the Secretary to St. Francis:
"IT IS THEREFORE ORDERED BY THE COURT that [C.C.] is placed in the custody of the St. Francis Academy, Salina, Kansas for purposes of treatment and rehabilitation. Said term of custody is until such time as the staff at the St. Francis Academy determines that [C.C.] is no longer in need of their services and the Court orders other disposition or custody."
K.S.A. 38-1616(a) states:
"(2) When a law enforcement officer has taken a juvenile into custody as authorized by subsection (a) of K.S.A. 38-1624 and amendments thereto and delivered the juvenile to a person or facility, other than a juvenile detention facility, designated by the secretary or when custody of a juvenile is awarded to the secretary, the expenses of the care and custody of the juvenile may be paid by the secretary out of the state social welfare fund, subject to payment or reimbursement as required in subsection (b), even though the juvenile does not meet the eligibility standards of K.S.A. 39-709 and amendments thereto.

*910 "(3) When the custody of a juvenile is awarded to the secretary of social and rehabilitation services, the expenses for the care and custody of the juvenile shall not be paid out of the county general fund." (Emphasis added.)
Here, C.C.'s placement in St. Francis was not designated by SRS nor did custody of C.C. remain with SRS at the close of the juvenile proceeding. Under 38-1616(a)(2), SRS is not liable for the expenses and care of C.C.
K.S.A. 38-1616(a)(1) provides: "If a juvenile alleged or adjudged to be a juvenile offender is not eligible for assistance under K.S.A. 39-709 and amendments thereto, expenses for the care and custody of the juvenile shall be paid out of the general fund of the county in which the proceedings are brought." As C.C. was not eligible for assistance under 39-709, the county is responsible for the costs of his treatment at St. Francis.
In Dodge City Med. Center v. Board of Gray County Comm'rs, 6 Kan. App.2d 731, 634 P.2d 163 (1981), this court addressed an issue similar to the issue presently presented. In Dodge City, a suspect was apprehended during the commission of a felony by being shot in the leg by a deputy sheriff. The suspect was taken to the hospital by the sheriff and received treatment. The county refused to pay the medical expenses and argued that, because the suspect was indigent, SRS was the proper source for payment. This court rejected the county's claim, stating: "The first public body with an obligation to pay for [the suspect's] care was the county, which requested it and which had the obligation to see that it was furnished." 6 Kan. App.2d at 734.
Here, the district court directed that C.C. be placed at St. Francis for treatment. Under 38-1616(a)(1), the county is obligated to pay for C.C.'s care. Whether the statutes could be construed to also require payment from SRS is irrelevant because, under Dodge City, 6 Kan. App.2d 734, the county is the first public body with the obligation to pay.
The strongest argument in support of the district court's ruling that SRS should pay the costs of C.C.'s care is that the Code for Care of Children provides that it should be liberally construed to best serve the child's welfare (38-1501) and the Juvenile Offenders Code provides that it should be liberally construed to best serve the juvenile's rehabilitation (38-1601). There is no question that placement in St. Francis was in the best interests *911 of C.C. His use of different drugs in alarming quantities and his indifference as to whether he lived or died proved he was a danger to himself and others. The court decided to cut through SRS "red tape" and take immediate action to get medical treatment for C.C. Imposing a duty on the district court to act in a child's best interests while charging the expenses to the county could arguably circumvent the legislature's intent that funding for children in need of care should come from SRS.
Kansas statutes allow the Secretary of SRS wide discretion in determining placement of a child. By these enactments, the legislature is presuming the Secretary will always act in the best interests of the child. From the facts introduced at trial, it is questionable whether SRS's procedure of utilizing a three-person waiting list for Level VI treatment is in the best interests of children needing such care. While not specifically addressed, this procedure has inevitably arisen because insufficient funding and inadequate space in the treatment facilities have prevented SRS from placing all juveniles in Level VI treatment facilities who may need such treatment. However, the difficulty in this case is that the SRS placement procedure, the sufficiency of SRS funding levels, and the availability of treatment facilities are not being challenged. Only the propriety of the district court's order placing C.C. in the custody of St. Francis and then directing SRS to pay the cost of C.C.'s custody and treatment are at issue.
The Code for Care of Children and the Juvenile Offenders Code are not in conflict as the county argues. Instead, both codes consistently state the district court cannot dictate placement of a child who is in SRS custody. For this court to allow the district court to place C.C. in St. Francis while holding that C.C. remained in SRS custody, we would have to rewrite the statutes or disregard the legislature's determination of what is in the best interests of a child. Since that is not the role of the appellate courts, the order of the district court that SRS pay the costs of C.C.'s custody and mental health treatment while at St. Francis is reversed.
The placement of C.C. in the custody of St. Francis is affirmed. The district court's order directing SRS to pay the costs of the custody and mental health treatment of C.C. is reversed, and *912 this case is remanded with directions to order the county to pay the costs of C.C.'s custody and treatment while at St. Francis.