(149 P.3d 12)
No. 96,388

In the Matter of the Adoption of S.J.R. and E.V.R.,
Minor Children.

Opinion filed December 22, 2006.

*Kevin G. Campbell*, of Lakin, for appellant natural father.

*Jon R. Craig*, of Craig & Gaede, P.A., of Garden City, for appellee stepfather.

Before MALONE, P.J., GREEN and BUSER, JJ.

GREEN, J.: N.R., the natural father of S.R. and E.R., minor children, appeals from a judgment of the trial court granting the stepfather the right to adopt the children. The trial court determined that the father's consent to the adoption was unnecessary because he had failed or refused to assume the duties of a parent during the 2 years before the filing of the adoption petition under K.S.A. 59-2136(d). Moreover, the trial court determined that the father was unfit, that the father's parental rights should be severed and terminated, and that the stepparent adoption should be granted under K.S.A. 59-2136(h). On appeal, the father maintains that K.S.A. 59-2136(d), not K.S.A. 59-2136(h), applies to and is controlling over a stepparent adoption. We agree. Next, the father contends that the trial court improperly relied on evidence of the father's unfitness and the best interests of the children in determining that the father's consent was not required. Because these factors were not controlling and were only two of the relevant factors considered by the trial court in deciding if the father had failed to perform the duties of a parent under K.S.A. 59-2136(d), we disagree. Finally, the father asserts that the trial court wrongly determined that the father's consent was not required under K.S.A. 59-2136(d). We disagree. Accordingly, we affirm.

N.R. and K.W., the natural mother of S.R. and E.R., were married in September 1999. In September 2000, K.W. and the children moved to a separate residence. N.R. and K.W. were divorced in November 2001. In the divorce decree, K.W. was granted sole custody of the children based upon N.R.'s "incarceration for producing and selling drugs, his tendency towards violence, and his failure to assume his parental obligations, including financial support." N.R. was allowed supervised visits with the children, with such visits worked out between the parties. Under the divorce de-

cree, N.R. was ordered to pay child support of $187 per month to K.W. beginning November 2001.

N.R. was incarcerated in county jails from late 2000 until 2002. The children last saw N.R. in 2001 when they visited him in the county jail. In 2002, N.R. was sentenced to prison for convictions of aggravated burglary, robbery, and possession of drug paraphernalia. N.R.'s extensive criminal history included four convictions for battery and drug-related convictions. N.R. is scheduled to be released from prison in July 2010.

K.W. married J.W. in February 2003, and she and the children have lived with J.W. since that time. In August 2005, J.W. petitioned for adoption of S.R. and E.R. Attached to the petition for adoption was K.W.'s written consent for J.W. to adopt the children. J.W. alleged that N.R.'s consent to the adoption was unnecessary because N.R. had failed or refused to assume the duties of a parent for 2 consecutive years preceding the filing of the adoption petition under K.S.A. 59-2136(d).

N.R. contested the adoption, arguing that he had provided financial support for his children before his incarceration and that he had continued to attempt to maintain a loving, paternal relationship with his children and to provide emotional stability for them. Counsel was appointed for N.R., and an evidentiary hearing was conducted before a district magistrate judge.

Before the evidentiary hearing, J.W. moved to amend the adoption petition to add an allegation that N.R. was unfit and that his parental rights should be terminated under K.S.A. 59-2136(h). N.R. objected to the amendment of the adoption petition. The trial court deferred ruling on N.R.'s objection and allowed J.W. to present evidence concerning his allegations under K.S.A. 59-2136(h).

When the evidentiary hearing occurred in this case, S.R. was 7 years old and E.R. was 5 years old. According to K.W., S.R. remembered N.R. but E.R. did not remember him. K.W. testified that S.R. remembered an incident where N.R. came to their house after the parents had separated. N.R. kicked in the front door of K.W.'s home, and the door frame fell inside the house close to where S.R. was standing. S.R. saw N.R. push K.W. and rip an

answering machine out of the wall. K.W. reported this incident to the police, and criminal charges were filed.

K.W. testified that when she lived with N.R., he was addicted to methamphetamine and marijuana and would leave for several days at a time. K.W. testified that N.R. brought methamphetamine home with him a few times and would smoke marijuana in the home. K.W. testified about an incident when S.R. was less than 2 years old and she found him on the bed holding a bag of methamphetamine. According to K.W., N.R. was mentally, emotionally, and physically abusive towards her.

K.W. acknowledged that N.R. had sent birthday and Christmas cards to S.R. and E.R. while he was incarcerated. K.W. testified that the first cards sent by N.R. to S.R. had the notation: "Make sure and ask your mom why I'm not there with you. It's her fault that I'm in jail." In another card, N.R. referred to K.W. with an epithet. K.W. testified that those cards were sent outside of the 2 years before the adoption petition had been filed. Seven cards were admitted into evidence at the hearing. Out of these seven cards, five were sent in the 2-year period before the filing of the adoption petition. K.W. testified that those were all of the cards received from N.R. in the 2 years before the filing of the adoption petition. K.W. testified that S.R. had also received a birthday card from N.R. in the month before the hearing.

K.W. testified that she moved from Garden City to Deerfield around February 2003. She did not inform N.R. or the district court of her new address. Nevertheless, K.W. testified that the children still received N.R.'s birthday and Christmas cards after the move. According to N.R., however, cards that he had sent to the children had been returned to him. At the hearing, N.R. introduced into evidence an envelope postmarked December 2002 that had been returned to him. N.R. later obtained K.W.'s new address and sent cards to the Deerfield address beginning in July 2004.

N.R. also testified that he had applied each year through the Salvation Army for Christmas gifts to be sent to the children. N.R. paid nothing for the gifts. According to K.W., the children had received Christmas presents from the Salvation Army in 2002 and 2004 but not in 2003.

K.W. testified that she had never received any child support from N.R. At the time of the hearing, N.R. had a job in which he earned 60 cents a day. N.R. earned just over $100 from January 2005 through November 7, 2005. N.R. admitted that he had never sent any child support to K.W. N.R. acknowledged that he could afford to send $4 to $5 a month but chose not to do so.

After the hearing, the magistrate judge filed a written memorandum decision in which he determined that K.S.A. 59-2136(d) was the controlling section in a stepparent adoption and that he would not consider evidence concerning unfitness under K.S.A. 59-2136(h). Based upon the evidence presented under K.S.A. 59-2136(d), the magistrate judge concluded that J.W. had failed to meet his burden to show by clear and convincing evidence that N.R. had failed to exercise his parental rights and duties in the 2 years immediately preceding the filing of the adoption petition.

J.W. and K.W. appealed the magistrate judge's decision to the district court. The parties submitted the case to the district court based upon the record from the evidentiary hearing. The district court determined that K.S.A. 59-2136(d) was not the controlling section in a stepparent adoption and that J.W. could properly amend his petition to include allegations under K.S.A. 59-2136(h). After reviewing the evidence presented at the hearing before the magistrate judge, the district court concluded that N.R. was unfit and ordered that his parental rights be terminated and that J.W. be allowed to adopt S.R. and E.R. The district court further concluded that N.R. had failed to provide comfort, support, or care for the children for at least 2 consecutive years before the adoption and that his consent was not required under either K.S.A. 59-2136(d) or K.S.A. 59-2136(h).

*Did the legislature intend K.S.A. 59-2136(d) to be the controlling section in a stepparent adoption case?*

First, N.R. maintains that K.S.A. 59-2136(d), not K.S.A. 59-2136(h), applies to and is controlling over a stepparent adoption.

N.R.'s argument requires interpretation of K.S.A. 59-2136. The interpretation of a statute presents a question of law over which an appellate court has unlimited review. An appellate court is not

bound by the trial court's interpretation of the statute. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006). Moreover, when interpreting statutes, this court bears in mind the following rules of construction:

"The fundamental rule of statutory construction is to ascertain the legislature's intent. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

K.S.A. 59-2136(d) states:

"In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

The relevant portion of K.S.A. 59-2136(h) states:

"When a father or alleged father appears and asserts parental rights, the court shall determine parentage, if necessary pursuant to the Kansas parentage act. If a father desires but is financially unable to employ an attorney, the court shall appoint an attorney for the father. Thereafter, the court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following:

. . . .

"(2) the father is unfit as a parent or incapable of giving consent."

In this case, the district court determined that K.S.A. 59-2136(d) and K.S.A. 59-2136(h) were not mutually exclusive and based its decision to grant J.W.'s adoption petition on both of these subsections. Nevertheless, N.R. argues that the clear intent of the legislature, as expressed in the language of K.S.A. 59-2136, was to distinguish between two categories of adoptions: those involving stepparents and those not involving stepparents.

Subsection (d) of K.S.A. 59-2136 is plain and unambiguous in that it applies to a stepparent adoption. That subsection sets forth the criteria to be considered in a stepparent adoption when the natural mother has consented to the adoption. Under that subsection, "the consent of such father must be given to the adoption *unless* such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent." (Emphasis added.) On the other hand, subsection (h) of K.S.A. 59-2136 is a general provision that sets forth the criteria to be considered in terminating parental rights. It appears that this subsection applies in any adoption proceeding where a father (or mother) has appeared and asserted parental rights.

"It is the duty of the court to reconcile different statutory provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]" *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 353, 770 P.2d 423 (1989). Generally, a specific statute controls over a general statute. See *Baumann v. Excel Industries, Inc.*, 17 Kan. App. 2d 807, 812, 845 P.2d 65, *rev. denied* 252 Kan. 1091 (1993). "When there is a conflict between a statute dealing generally with a subject and one dealing specifically with a certain phase of a subject, the specific statute controls unless the legislature intended to make the general act controlling. [Citation omitted.]" *In re C.C.*, 19 Kan. App. 2d 906, 908-09, 878 P.2d 865, *rev. denied* 255 Kan. 1002 (1994).

Here, the legislature specifically set forth the criteria to be considered in a stepparent adoption case under subsection (d) of K.S.A. 59-2136. Although subsection (h) of K.S.A. 59-2136 applies to adoption cases, it is the more general provision. There is no

indication that the legislature intended to make subsection (h) applicable in stepparent adoption cases.

In arguing that K.S.A. 59-2136(d) is controlling over stepparent adoption cases, N.R. points to other subsections of K.S.A. 59-2136 that specifically refer to the category of stepparent adoptions under subsection (d). For example, subsection (e) of K.S.A. 59-2136 sets forth the procedure for filing a petition to terminate a father's parental rights when the mother has relinquished her rights or has consented to the adoption of her natural child. Subsection (e) of K.S.A. 59-2136 begins as follows: *"Except as provided in subsection (d)*, if a mother desires to relinquish or consents to the adoption of such mother's child, a petition shall be filed in the district court to terminate the parental rights of the father . . . ."* (Emphasis added.) In addition, subsection (c) states in part: *"In stepparent adoptions under subsection (d)*, the court may appoint an attorney to represent any father who is unknown or whose whereabouts are unknown. *In all other cases*, the court shall appoint an attorney to represent any father who is unknown or whose whereabouts are unknown."* (Emphasis added.) These subsections further evidence the legislature's intent to create a separate category under K.S.A. 59-2136(d) for stepparent adoptions.

It is important to point out that K.S.A. 59-2136(h)(7) contains similar language to that found in subsection (d). Specifically, K.S.A. 59-2136(h)(7) allows the trial court to terminate parental rights upon a finding by clear and convincing evidence that "the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition." If the legislature had wanted K.S.A. 59-2136(h) to apply in stepparent adoption cases, why would it have enacted K.S.A. 59-2136(d) which contains essentially the same language found in K.S.A. 59-2136(h)(7)? K.S.A. 59-2136(d) would simply be a superfluous provision.

N.R. further argues that the Kansas appellate courts have long recognized a distinction between adoptions involving stepparents and those not involving stepparents and that different standards apply to these two categories. To support his argument, N.R. cites *In re Adoption of R.W.B.*, 27 Kan. App. 2d 549, 551, 7 P.3d 306,

*rev. denied* 270 Kan. 898 (2000), a stepparent adoption case, where this court stated: "The issue before this court is not the father's parental fitness. [Citation omitted.] Rather, we are to determine whether the father has performed certain duties. The controlling Kansas statute is K.S.A. 59-2136(d) . . . ." In addition, N.R. cites the stepparent adoption cases of *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 97, 897 P.2d 181 (1995), and *In re Adoption of K.J.B.*, 265 Kan. 90, 96, 959 P.2d 853 (1998), where it was stated: "K.S.A. 59-2136(d) is controlling." None of those cases, however, dealt with the issue that is present here: whether K.S.A. 59-2136(h)(2) relating to unfitness can be used in a stepparent adoption. In all of those cases, the trial court's decision to terminate parental rights was based upon its determination that the natural father had failed to assume parental rights in the 2 years preceding the filing of the adoption petition. Neither party cites a Kansas case where it has been determined whether K.S.A. 59-2136(h) can be used in a stepparent adoption case.

Although not cited by either party, the trial court in *In re Adoption of Baby Boy S.*, 16 Kan. App. 2d 311, 822 P.2d 76 (1991), applied subsection (h) of K.S.A. 1990 Supp. 59-2136 to terminate the natural father's rights in a stepparent adoption. There, the trial court terminated the father's parental rights under K.S.A. 1990 Supp. 59-2136(h)(4), for failure to provide support to the mother during the 6 months before the child's birth. This court found that the trial court's conclusion was supported by substantial competent evidence. Nevertheless, the natural father never challenged the application of K.S.A. 1990 Supp. 59-2136(h) to a stepparent adoption case. *Baby Boy S.* was later cited in *In re Adoption of S.E.B.*, 257 Kan. 266, 272, 891 P.2d 440 (1995), which was a stepparent adoption case under K.S.A. 59-2136(d). Our Supreme Court distinguished the facts of *Baby Boy S.* from those in *S.E.B.* In *S.E.B.*, the parties never asked our Supreme Court to decide whether K.S.A. 59-2136(h) had application in a stepparent adoption case.

Although K.S.A. 59-2136(h) was used to terminate parental rights in the stepparent adoption case of *Baby Boy S.*, the natural father in that case never challenged the application of that provision. Based upon the plain language of K.S.A. 59-2136, we deter-

mine that the legislature intended K.S.A. 59-2136(d) to be the controlling section in a stepparent adoption case. As a result, the trial court erred in granting the stepparent adoption under subsection K.S.A. 59-2136(h).

*Did the trial court err in relying on evidence of N.R.'s unfitness and the best interests of the children in determining that N.R.'s consent was not required?*

Next, N.R. argues that the district court relied too heavily on N.R.'s unfitness and the best interests of the children in its decision. N.R. maintains that unfitness of the parent and the best interests of the child are not an issue in a stepparent adoption under K.S.A. 59-2136(d).

Our Supreme Court has held that the best interests of the children and the unfitness of the parent are not controlling factors when determining whether a natural parent's consent to an adoption is unnecessary for failing to assume parental duties under K.S.A. 59-2136(d). See *S.E.B.*, 257 Kan. 266, Syl. ¶ 2.

Here, in its memorandum decision, the trial court made findings concerning N.R.'s unfitness. Moreover, after setting forth these findings, the trial court stated that the "natural and best interest of these children in being loved, cared for, and provided for and adopted is pre-eminent to the liberty right of the natural father in this case." Nevertheless, it is apparent that the trial court's findings concerning N.R.'s unfitness and its statement concerning the best interests of the children related to its determination of unfitness under K.S.A. 59-2136(h).

Before its analysis of N.R.'s unfitness under K.S.A. 59-2136(h), the trial court set forth findings relating to N.R.'s failure to assume parental duties. The trial court concluded that section as follows:

"The Court concludes that the Father's efforts to contact or communicate with the children were minor or incidental both for two years prior to the filing of the adoption petition and at least 2 years prior to that. The Court finds that pursuant to K.S.A. 59-2136(d), the father has failed to assume the duties of a parent. His consent is therefore not necessary for the adoption."

There is no indication from the trial court's decision that it used N.R.'s unfitness and the best interests of the children as controlling

factors in determining whether N.R.'s consent was required under K.S.A. 59-2136(d).

Nevertheless, J.W. points out that the legislature has recently amended K.S.A. 59-2136(d) to allow a court to consider the best interests of the child and the fitness of a nonconsenting parent in a stepparent adoption. House Bill 2665, which was passed in 2006, adds the following language at the end of K.S.A. 59-2136(d): "The Court may consider the best interests of the child and the fitness of the nonconsenting parent in determining whether a stepparent adoption should be granted." As a general rule, a statute operates prospectively unless its language clearly indicates the legislature intended it to operate retrospectively. *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 220, 73 P.3d 753 (2003). There is no indication that the legislature intended for the language added to K.S.A. 59-2136(d) to operate retrospectively. Moreover, J.W. cites no authority establishing that this additional language should be given retroactive effect.

Finally, an argument can be made that when the *S.E.B.* court stated that the fitness of the nonconsenting parent and the best interests of the children were not controlling factors under K.S.A. 59-2136(d), the court implicitly conceded that these factors, along with other relevant factors, could be considered in deciding if the nonconsenting parent had failed to perform parental duties under K.S.A. 59-2136(d). A court must look at all the surrounding circumstances when determining whether a nonconsenting parent has failed to assume parental duties for the 2 preceding consecutive years. *S.E.B.*, 257 Kan. at 273; *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987). Here, the father's fitness and the best interests of the children, although not controlling factors, were factors to be considered in deciding if the father had failed to perform the obligations of a parent under K.S.A. 59-2136(d). As a result, the father's argument fails.

*Did the trial court err in determining that N.R.'s consent was not required under K.S.A. 59-2136(d)?*

Finally, N.R. argues that the trial court erred in concluding that he had failed to assume his parental duties in the 2 years prior to

the filing of the adoption petition and that his consent was not required under K.S.A. 59-2136(d). Here, the applicable 2-year period ran from August 2003 to August 2005.

Whether a parent has refused or failed to assume parental duties for the 2 years prior to the filing of the adoption petition presents a question of fact. An appellate court reviews the decision to determine whether it is supported by substantial competent evidence presented at a hearing on the matter. An appellate court does not reweigh the evidence or pass on the credibility of witnesses. Instead, an appellate court reviews the facts in the light most favorable to the prevailing party to determine whether the decision of the trial court is properly supported by the evidence. *In re Adoption of A.J.P.*, 24 Kan. App. 2d 891, 892-93, 953 P.2d 1387 (1998).

The duties of a parent under K.S.A. 59-2136(d) require not only financial support but also love, affection, and interest toward the child. *K.J.B.*, 265 Kan. 90, Syl. ¶ 3. K.S.A. 59-2136(d) is to be strictly construed in favor of maintaining the rights of natural parents. 265 Kan. at 95. When determining whether a nonconsenting parent in an adoption proceeding has failed to assume parental duties for 2 consecutive years, all of the surrounding circumstances must be considered. *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987).

When a parent is incarcerated, different standards must be applied than when the parent is free from such constraints. *F.A.R.*, 242 Kan. at 236. "When a nonconsenting parent is incarcerated and unable to fulfill the customary parental duties required of an unrestrained parent, the court must determine whether such parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability." *S.E.B.*, 257 Kan. at 273. "The trial court must consider whether the [incarcerated] parent has made reasonable attempts, under all the circumstances, to maintain a close relationship with his or her child, and whether those attempts are sufficient to require the parent's consent be given to an adoption. [Citation omitted.]" *A.J.P.*, 24 Kan. App. 2d at 893.

*Failure to provide child support*

Here, K.W. testified that she had never received child support from N.R. The divorce decree ordered N.R. to pay child support

of $187 per month to K.W. Citing *In re Marriage of Thurmond*, 265 Kan. 715, 962 P.2d 1064 (1998), and *Rupp v. Grubb*, 265 Kan. 711, 962 P.2d 1074 (1998), the trial court noted that N.R.'s incarceration did not justify a modification or suspension of his obligation to support his children. The trial court further stated that the unpaid child support judgment of $9,724 reflected N.R.'s failure to support his children.

N.R. points out that both *Thurmond* and *Rupp* were cases that involved the issue of modification or suspension of child support. Those cases did not involve an adoption without a natural parent's consent. In *K.J.B.*, 265 Kan. 90, Syl. ¶ 3, our Supreme Court set forth the following standard applicable under K.S.A. 59-2136(d): "The duties of a parent addressed by K.S.A. 59-2136(d) include not only the duty of financial support, but also the natural and moral duty of a parent to show affection, care, and interest toward his or her child." Our Supreme Court further stated: "To judicially sever parental rights under K.S.A. 59-2136(d), there must be a finding of failure to assume parental duties in failing to provide a substantial portion of child support and a finding of failure to show affection, care, and interest toward his or her child." 265 Kan. 90, Syl. ¶ 6.

In *In re Application to Adopt H.B.S.C.*, 28 Kan. App. 2d 191, 201, 12 P.3d 916 (2000), this court set forth the following regarding the standards under K.S.A. 59-2136(d) when the nonconsenting parent is incarcerated:

"When the father is incarcerated and unable to provide financially for the child, the focus of the trial court's inquiry seems to shift to the love and affection side of parenting. Even assuming the father failed to provide financial support for his child, the court's inquiry continues to the emotional support factor. To judicially sever parental rights under K.S.A. 59-2136(d), there must be a failure of both financial and emotional support. [Citation omitted.]"

Here, the trial court found that N.R.'s income from January through November 7, 2005, was $100.45 and that N.R.'s income for 2003 and 2004 was comparable. Clearly, N.R. was financially unable to provide the court-ordered child support amount due to his incarceration. Thus, it appears that the trial court's inquiry should have shifted to the love and affection side of parenting.

Nevertheless, although N.R. was unable to provide the court-ordered child support of $187 per month, we note that N.R. failed to contribute anything to the children when he testified that he was able to do so. N.R. testified that he could afford to send $4 or $5 a month to the children. Nevertheless, he chose to send them nothing. While this amount would not have come close to meeting the court-ordered child support, it would have evidenced an effort by N.R. to show his love and affection for the children.

*N.R.'s contacts and communications with the children*

The trial court found that seven exhibits were admitted at the hearing of cards sent by N.R. to his children. The trial court noted that only five of the cards had been sent in the 2 years immediately before the filing of the adoption petition. Testimony from K.W. revealed that the five cards were birthday and Christmas cards. K.W. indicated that the children had received no other cards in the 2 years before the filing of the adoption petition. The trial court found that N.R.'s efforts to contact or communicate with the children were minor and incidental in the 2 years before the filing of the adoption petition and at least 2 years before that time period.

N.R. attempts to justify his infrequent contacts with the children by asserting that he did not know the children's address for nearly half of the 2-year period before the filing of the adoption petition because K.W. had moved to a new address with the children. K.W. testified that she moved from Garden City to Deerfield in February 2003. K.W. acknowledged that she did not tell N.R. or the district court of her new address.

N.R. testified that he discovered K.W.'s new address after his daughter from a previous marriage told him that she had seen K.W., who was pregnant and about to have a baby, at the hospital. N.R. looked in the paper and found the birth announcement for J.W. and K.W. N.R. wrote his sister and asked her to look in the areawide directory for K.W.'s address. According to N.R., he started sending cards to the Deerfield address in July 2004.

At the hearing, N.R. presented an envelope showing that a card he sent to the children in December 2002 had been returned to him, which was outside of the 2-year time period under K.S.A. 59-

2136(d). N.R. testified that he had other cards returned to him but that he could not find those cards. Nevertheless, K.W. testified that even after she moved, the children continued receiving birthday and Christmas cards from N.R. Two cards admitted into evidence at the hearing had been forwarded from the Garden City address.

The trial court found that K.W. did move from Garden City to Deerfield, which was 17 miles west of Garden City, without formal notice to either N.R. or the district court. The trial court noted that both cities were in the areawide directory where N.R.'s sister found the phone number and street address of the children.

It is unclear whether N.R. would have been able to locate K.W. in the areawide directory without knowing that she had married J.W. and taken his last name. Nevertheless, the evidence presented at the hearing established that a forwarding order was on file and the children were still receiving cards that N.R. sent to the previous address. The cards admitted as exhibits at the hearing indicate that even after N.R. obtained the new address, the children only received a few cards from him.

K.S.A. 59-2136(d) states as follows: "In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions." " 'Incidental' has been defined as, 'casual, of minor importance, insignificant, and of little consequence.' [Citation omitted.]" *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 98, 897 P.2d 181 (1995). The question of whether the contacts between the parent and child are incidental such that the contact may be disregarded is reviewed on a case-by-case basis. *A.J.P.*, 24 Kan. App. 2d at 892-93.

Here, the trial court found that N.R.'s efforts to contact or communicate with the children were minor and incidental. The trial court further found that under K.S.A. 59-2136(d), N.R. had failed to assume parental duties. This court's review is limited to determining whether substantial competent evidence exists to support these findings. See *A.J.P.*, 24 Kan. App. 2d at 892-94.

N.R. points out that the trial court made findings concerning the cards he sent but failed to mention the Christmas gifts that the

children received from the Salvation Army. N.R. testified that he had Christmas gifts sent to the children in 2003 and 2004 through the Salvation Army. N.R. did not pay any money but filled out an application for the gifts. Although K.W. acknowledged that the children had received the Christmas gifts in 2003, she testified that the children did not receive such gifts in 2004.

The extent of N.R.'s contacts and communication with the children during the 2-year period prior to the filing of the adoption petition appears to be limited to birthday and Christmas cards sent from prison and N.R.'s application to have Christmas gifts sent through the Salvation Army. There was no indication that N.R. attempted to contact the children by telephone. Moreover, no exhibits were admitted of cards or letters that N.R. had sent to the children during the immediately preceding 2-year period for reasons other than birthdays and Christmas. The trial court properly determined that these contacts were incidental, even in the context of N.R. being incarcerated.

*Evidence of events outside of 2-year period*

In *A.J.P.*, 24 Kan. App. 2d 891, Syl. ¶ 2, this court stated the following regarding evidence of events outside the 2-year time period under K.S.A. 59-2136(d):

"If a natural parent is incarcerated for all or a substantial portion of the 2 years prior to the filing of an adoption petition, it is proper, if necessary, to look to and consider events beyond the 2-year inquiry period established by K.S.A. 59-2136(d) to determine whether the parent has made sufficient efforts to maintain a close relationship with his or her child prior to the time he or she was incarcerated."

See also *F.A.R.*, 242 Kan. at 238 (discussing predecessor statute and concluding that no error in admitting evidence of events occurring before 2-year period prior to filing of adoption petition to extent such evidence relevant to explain or prove conduct or lack thereof during 2-year period).

Because N.R. had been incarcerated during the entire 2-year period before the filing of the adoption petition, evidence of events before the 2-year period would be relevant in determining whether N.R. had made sufficient efforts to maintain a close relationship with his children before he was incarcerated.

Testimony from both N.R. and K.W. revealed that N.R. had been incarcerated since the late part of 2000. As the trial court pointed out, the last time the children saw N.R. was when S.R. was 3 and E.R. was 1. The trial court noted that N.R.'s convictions in one of his criminal cases stemmed from a home invasion and robbery where K.W. and S.R. were the victims. At the hearing, K.W. testified about an incident that occurred after she separated from N.R. when N.R. came to her residence and knocked down the front door. K.W. testified that the door frame fell inside the house close to where S.R. was standing. N.R. pushed K.W. down and ripped an answering machine out of the wall. K.W. testified that S.R. witnessed this violent scene and was still able to describe it perfectly.

Although not contained in its findings under K.S.A. 59-2136(d), the trial court did find that N.R. engaged in prolonged and extensive drug abuse. The trial court found that N.R. habitually disappeared for days without notice to K.W., leaving the children in her sole custody while he engaged in the use and sale of illegal drugs. These findings are supported by evidence in the record. K.W. testified that when she and N.R. lived together, he was addicted to methamphetamine and marijuana. K.W. testified that N.R. would be gone for 3 to 4 days at a time using drugs. N.R. brought methamphetamine home with him several times and frequently smoked marijuana while he was at home. K.W. recalled one instance where she discovered S.R. sitting on the bed holding a bag of methamphetamine.

When N.R. was not constrained by incarceration, he made little effort to fulfill his parental responsibilities. He engaged in extensive drug use and would stay gone from the home for several days at a time. He exposed his children to his drug use by bringing drugs into the home. Moreover, he committed illegal and violent acts in front of his son. Due to N.R.'s conduct, he failed to establish a close parental relationship with his children. This is similar to the lack of bonding between the father and his child that was present in *In re Adoption of Baby Boy S.*, 16 Kan. App. 2d 311, 822 P.2d 76 (1991), where this court affirmed the trial court's decision to terminate parental rights under K.S.A. 1990 Supp. 59-2136(h)(4). See *S.E.B.*, 257 Kan. at 272 (distinguishing *Baby Boy S.* by pointing

out that child in *Baby Boy S.* was neither aware of nor had bonded with father). Before his incarceration, N.R. made insufficient efforts to fulfill his parental responsibilities.

*Incarceration*

The trial court found that N.R.'s earliest possible release date from prison was July 24, 2010. As the trial court noted, S.R. will be 12 and E.R. will be 10 when N.R. is released from prison. The last time the children saw their father was when S.R. was 3 and E.R. was 1. K.W. testified that E.R. did not even remember N.R. N.R.'s criminal acts and extensive criminal history effectively removed him from the children's lives for 9 years. This absence from his children is significant. Moreover, when a parent is incarcerated for several years or more, it is very difficult for the parent to furnish his or her children with guidance. Therefore, the trial court pointing out N.R.'s earliest potential release date of July 24, 2010, was a relevant factor to be considered under K.S.A. 59-2136(d).

*Whether the father utilized all of the possible opportunities that were available to maintain contact with the children.*

The question here is whether N.R. pursued all possible opportunities and options available to him during his incarceration to carry out his parental duties to the best of his ability. See *S.E.B.*, 257 Kan. at 273. The only efforts made by N.R. during his incarceration were to send a few cards and apply for Christmas gifts through the Salvation Army. As discussed above, there was no indication that N.R. attempted to contact the children by telephone. Moreover, no exhibits were admitted of cards or letters that N.R. had sent to the children during the 2-year period for reasons other than birthdays and Christmas. Such contact constituted insufficient efforts by N.R. to fulfill his parental responsibilities. Substantial competent evidence exists in the record to support the trial court's decision that N.R. had failed to assume the duties of a parent under K.S.A. 59-2136(d).

Affirmed.