NOT DESIGNATED FOR PUBLICATION

No. 114,535

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Application of
D.P.B. to Adopt K.L.W., a minor child.

MEMORANDUM OPINION

Appeal from Coffey District Court; PHILLIP M FROMME, judge. Opinion filed May 6, 2016. Affirmed.

*Linda S. McMurray*, of Burlington, for appellant natural father.

*Thomas A. Krueger*, of Krueger Law Offices, of Emporia, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and BURGESS, S.J.

*Per Curiam*: K.L.W.'s natural father (Father) appeals the district court's ruling terminating his parental rights and granting the petition for adoption of K.L.W. by her stepfather. Father argues the district court applied the incorrect statute in finding him an unfit parent and terminating his rights. Because we agree the district court applied the correct statute and because we find ample evidence in the record to support the district court's finding of unfitness, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Prior to and shortly after K.L.W.'s birth in 2006, Father resided with Mother and Mother's daughter from a previous relationship, B.M.B. (K.L.W.'s half-sister). Father was present at the birth of K.L.W. and signed her birth certificate, but Father and Mother

1

never married. Approximately 4 months after K.L.W.'s birth, Father was arrested for allegations of aggravated indecent liberties with a child, namely K.L.W.'s half-sister. Father ultimately pled no contest to the charges and was imprisoned.

A no contact order was issued in October 2011, requiring Father to have no contact with Mother and K.L.W. Since that time, Father made no attempt to contact K.L.W. in compliance with the order. Father was released on parole in November 2011 but was incarcerated in April 2012 for a parole violation. Father was released in July 2012 but incarcerated again in June 2013 for failure to register as a sex offender. Father's earliest possible release date is 2020, followed by 2 years of postrelease supervision.

In 2008, a child support order was established, with Father ordered to pay approximately $206 per month in child support. He made irregular payments ranging from $10 to $100 a month until he claimed he could no longer make payments due to his incarceration. At the time of trial, Father owed over $10,000 in back child support. Father did send K.L.W. cards and a few birthday and Christmas gifts until the no contact order was put into place.

In 2010, Mother married Stepfather, who filed a petition to adopt K.L.W. in November 2014. Mother consented to the adoption, but Father refused to consent. Stepfather has known K.L.W. over half of her life and has been financially supporting her. In August 2015, the district court terminated Father's parental rights and granted the adoption of K.L.W. by Stepfather.

Father timely appeals.

DID THE DISTRICT COURT APPLY THE CORRECT STATUTE?

Father argues the district court erred in applying K.S.A. 2015 Supp. 59-2136(h), claiming the district court should have evaluated his conduct under K.S.A. 2015 Supp. 59-2136(d). As resolving this question requires us to engage in statutory interpretation, such a question is one of law over which our review is unlimited. *In re Adoption of J.M.D.*, 293 Kan. 153, 158, 260 P.3d 1196 (2011).

K.S.A. 2015 Supp. 59-2136 addresses the involuntary relinquishment of parental rights or consent to adoption. Where there is no voluntary relinquishment or consent, the statute provides procedures for determining whether parental rights should be terminated in order to allow an adoption to move forward. "K.S.A. [2015] Supp. 59-2136(d) typically governs the termination of parental rights in stepparent adoptions while K.S.A. [2015] Supp. 59-2136(h) governs the termination of parental rights in all other adoptions." *In re Adoption of P.Z.K.*, 50 Kan. App. 2d 617, 618, 332 P.3d 187 (2014).

The district court found Father unfit under the following provisions of K.S.A. 2015 Supp. 59-2136(h):

> "(1)When a father or alleged father appears and asserts parental rights, the court shall determine parentage, if necessary pursuant to the Kansas parentage act, K.S.A. 2015 Supp. 23-2201 *et seq.*, and amendments thereto. If a father desires but is financially unable to employ an attorney, the court shall appoint an attorney for the father. Thereafter, the court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following:
> . . . .
> '(B) the father is unfit as a parent or incapable of giving consent.
> . . . .
> "(2) In making a finding whether parental rights shall be terminated under this subsection, the court may:
> '(A) Consider and weigh the best interest of the child; and

3

'(B) disregard incidental visitations, contacts, communications or contributions."

Father argues this is not the applicable section of the statute for this adoption. Instead, because this is a stepparent adoption, he claims the applicable statute should be K.S.A. 2015 Supp. 59-2136(d), which states:

> "In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 2015 Supp. 23-2208, and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent."

K.S.A. 2015 Supp. 23-2208(a)(1), (2), and (3) all describe a presumed father under a marriage or attempted marriage relationship.

Father first argues that the district court's use of K.S.A. 2015 Supp. 59-2136(h) ignored the Kansas Parentage Act. Specifically, he argues that his acknowledgment of K.L.W. as his daughter on her birth certificate establishes him as the presumed father in satisfaction of statutes within the Kansas Parentage Act. While we do not dispute that Father is a presumed father for the reason he states, Father's argument ignores vital language contained in K.S.A. 2015 Supp. 59-2136(d): Father must be a presumed father as a result of K.L.W. being born of a marriage or attempted marriage between Father and Mother. Because the goal of statutory interpretation is to ascertain the intent of the legislature, words must be given their plain meaning, and language found in the statute cannot be excluded. See *In re Adoption of S.J.R.*, 37 Kan. App. 2d 28, 33, 149 P.3d 12 (2006) (quoting *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 [2006]).

4

This issue has been addressed by another panel of this court which held: "K.S.A. [2015] Supp. 59-2136(d) only governs when there is a presumed father due to a marriage relationship as described in K.S.A. [2015] Supp. 23-2208(a)(1), (2), or (3), or when the child is the father's child under the prior law of this state." *In re P.Z.K.*, 50 Kan. App. 2d at 620. The panel further stated:

"[T]he use of the term 'legitimate child' signals that the prior law being referred to was when Kansas statutes distinguished between legitimate and illegitimate children. Prior to 1985, Kansas law differentiated between children born of a marriage (legitimate) and children born outside of marriage (illegitimate). [Citations omitted.]

"We conclude K.S.A. [2015] Supp. 59-2136(d) refers to situations covered under Kansas statutes prior to 1985 to the extent that the statute applies if the child qualifies as 'a legitimate child under prior law' of this state." *In re P.Z.K.*, 50 Kan. App. 2d at 621.

The notion that K.S.A. 2015 Supp. 59-2136(d) only applies in certain stepparent adoptions is further bolstered when the legislative history of K.S.A. 59-2136 is examined. The Advisory Committee's comments accompanying the enactment of K.S.A. 59-2136(d) stated:

"'Subsection (d) limits the grounds for termination of *certain natural fathers'* parental rights in connection with stepparent adoptions. Generally, *if the child was the product of a marriage or attempted marriage*, the consent of the father must be obtained unless there was a failure to assume parental duties for two years. . . .' (Emphasis added.) Minutes of the House Judiciary Committee, March 28, 1990, Attachment 3." *In re J.M.D.*, 293 Kan. at 162.

Here, Father was merely the presumptive father under K.S.A. 23-2207(b), codified in 1985. This is not a pre-1985 law; therefore, Father does not qualify as a presumed father under K.S.A. 2015 Supp. 59-2136(d). Accordingly, the district court correctly applied K.S.A. 2015 Supp. 59-2136(h).

5

WAS THERE CLEAR AND CONVINCING EVIDENCE THAT FATHER WAS AN UNFIT PARENT?

The district court terminated Father's parental rights under K.S.A. 2015 Supp. 59-2136(h)(1)(B) by finding that there was clear and convincing evidence Father was unfit as a parent. In doing so, the district court considered the best interests of K.L.W. and disregarded "incidental visitations, contacts, communications [and] contributions" as allowed under K.S.A. 2015 Supp. 59-2136(h)(2)(B).

Interestingly, Father does not argue on appeal that there was insufficient evidence to terminate his parental rights under K.S.A. 2015 Supp. 59-2136(h). Instead, he only argues that there was insufficient evidence to terminate his rights and that the best interests of K.L.W. were not to be considered under K.S.A. 2015 Supp. 59-2136(d). Typically, "[w]here the appellant fails to brief an issue, that issue is waived or abandoned." *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, Syl. ¶ 4, 106 P.3d 483 (2005). However, because "adoption statutes are to be strictly construed in favor of maintaining the rights of a natural parent," *In re Adoption of K.J.B.*, 265 Kan. 90, 95, 959 P.2d 853 (1998), *overruled on other grounds by In re J.M.D.*, 293 Kan. 153, we will analyze whether there was sufficient evidence to terminate Father's parental rights under K.S.A. 2015 Supp. 59-2136(h).

When a district court terminates parental rights based on factual findings made under K.S.A. 2015 Supp. 51-2136(h)(1), those factual findings will be reviewed on appeal to determine "if, after reviewing all the evidence in the light most favorable to the prevailing party, the . . . findings are . . . supported by clear and convincing evidence. [Citation omitted.] An appellate court should not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. [Citation omitted.]" *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); see K.S.A. 2015 Supp. 59-2136(h)(1).

Here, the district court found Father unfit as a parent. The first and foremost consideration by the district court was Father's sexual abuse of K.L.W.'s half-sister:

"[Father's] conduct toward [B.M.B.] is clearly child abuse and shows his unfitness as a parent. His treatment of her, and I'm referring to the sex offenses, and his admissions to [the police officer], which I'm talking about the admissions during the initial interviews where [Father] said he did fear he would do the same kind of things to his own child if the child was a girl, raises serious concerns about his mental fitness as a parent and add to that the allegations in Osage County involving the 15 year old girl there."

Second, the district court found Father had failed to support K.L.W. as Father had not paid child support as ordered and, at the time of trial, owed over $10,000 toward his obligation. However, the district court did note that Father's failure to pay child support while in prison could not be held against him as Father did not have the ability to pay. We observe that the district court failed to note that on both occasions when Father was on parole, Father made no regular child support payments in the amount ordered by the court.

Third, the district court stated that it would be 2022 before Father could have any contact with K.L.W. because of the no contact order in place. At that point, K.L.W. would be 16 years old and would not have seen Father since she was 4 months old. The gifts and letters were considered incidental contacts and contributions.

Finally, the district court held:

"Now clearly it's not in the best interests of this child [K.L.W.] to be in contact with [Father]. It would be emotionally wrong to force the mother of the child to have any dealings with [Father]. She would be in constant fear for the safety of her children based on [Father's] conduct as a parent. It would be detrimental to the emotional well-being of the child to have contact with [Father].

"[Father's] criminal record indicates he cannot or is unlikely to control his sexual behavior around children and this problem is unlikely to change in the future. His conduct has been sexually cruel in nature and is clearly child abuse."

Based on the above findings, the district court held that Father was an unfit parent and it was in the best interests of K.L.W. to terminate his parental rights and grant the adoption. Our review of the record shows that the district court's findings were supported by clear and convincing evidence. The district court correctly applied K.S.A. 2015 Supp. 59-2136(h) in terminating Father's parental rights and granting the adoption.

Affirmed.