NOT DESIGNATED FOR PUBLICATION

No. 117,235

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COREY STANSBURY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed November 22, 2017. Affirmed.

*Bryce Haverkamp*, of Garden City, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and POWELL, JJ.

PER CURIAM: Corey Stansbury appeals his conviction for violation of a protective order, claiming his fundamental right to parent his children was violated by his conviction. Because the protection order prohibited Stansbury from using his children as a conduit to communicate with his ex-wife but did not prohibit him from communicating with his children, we find the protection order did not impermissibly restrict Stansbury's parental rights and, therefore, affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Stansbury was common-law married to Nichole Stobaugh, and they were together from 2007 through 2013. Two children were born of their marriage—Lily and Jayden. Stansbury and Stobaugh were divorced in 2013; afterwards, they shared joint legal custody of their children.

At Stobaugh's request, on December 17, 2015, the district court entered a protection from stalking order that was to remain effective until December 17, 2016. The order stated in relevant part that Stansbury "shall not . . . contact or otherwise communicate with [Stobaugh]"; "shall not contact [Stobaugh], either directly or indirectly"; and "shall not direct or request another to contact [Stobaugh], either directly or indirectly." The order did not prevent Stansbury from contacting his children.

Only a month later, in January 2016, Stansbury was arrested for violating this protective order. He was ultimately charged, pled guilty to the charge, and was given a 60-day suspended sentence, one year of unsupervised probation, and assessed fines.

On April 4, 2016, while Stansbury was in jail on an unrelated matter, he mailed a letter to his son, Jayden. In the letter Stansbury discussed how he was doing, wished Jayden a happy birthday, and wrote: "Ask Mommy if she can take you, Dylan, Lily, and Summer to Applebee's on Tuesday or Thursday so y'all can eat there for your birthday." In May 2016, Stansbury sent cards to his children, one of which was a Mother's Day card, for the children to give to their mother. The Mother's Day card read: "To: Mom From: Lily & Jayden Happy Mother's Day." When Stansbury made these contacts, Jayden was seven years old and Lily was five years old.

Based upon these communications, Stansbury was again charged with violation of a protective order. At trial, Stansbury argued through counsel that natural parents have a

2

fundamental right to raise their children, so any letters sent to his children should be protected under that fundamental right. The district court rejected this argument and found Stansbury guilty by relying only on the April 4, 2016 letter he sent to his son. In its decision, the district court noted that it did not dispute that parents have a fundamental right to raise their children but that a parent may not exercise that right in a way that violates criminal law or court orders. The court sentenced Stansbury to time already served.

Stansbury timely appeals.

## DOES ENFORCING A PROTECTIVE ORDER VIOLATE A FATHER'S FUNDAMENTAL RIGHT TO PARENT HIS CHILDREN?

Stansbury appeals his conviction for violation of a protective order solely on the basis that the prohibitions contained in the protective order may not trump his fundamental right to parent his children, meaning his conviction for violating the order based upon his communication with his son was in violation of his constitutional rights. Whether a defendant's constitutional rights have been violated is a question of law that this court reviews de novo. See *State v. Jenkins*, 295 Kan. 431, 434, 284 P.3d 1037 (2012).

In support of his argument, Stansbury argues that he has a fundamental right to raise his children. He cites *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430, 242 P.3d 1168 (2010), as showing that natural parents have a fundamental right to raise their children. He then cites *In re Adoption of S.J.R.*, 37 Kan. App. 2d 28, 45, 149 P.3d 12 (2006), as showing that a natural father does not lose his fundamental right to raise his children merely because he has become incarcerated and as showing that a parent who is incarcerated can still continue to parent his children. Unfortunately for Stansbury, neither

3

case is helpful to his argument as both of those cases merely state what is required for a natural parent to maintain his or her parental rights while incarcerated.

Here, the State has not alleged that Stansbury does not have parental rights or that he cannot send letters to his children. Stansbury even acknowledges in his brief that his children are not listed in the protective order, and he continues to have joint legal custody of the children. Instead, the State is asserting that he cannot use his children, or anyone else, to directly or indirectly contact and harass Stobaugh. This language is specifically spelled out in the protective order.

We agree with Stansbury that—as a parent who shares joint legal custody of his children and who exercises his custodial rights—he has a fundamental right to raise his children. See *In re Adoption of Baby Girl P.*, 291 Kan. at 430. However, this fundamental right is not absolute; it can be limited if the government has a compelling state interest and the regulation is narrowly tailored to achieve that interest. See *In re Adoption of K.J.B.*, 265 Kan. 90, 101, 959 P.2d 853 (1998).

In the out-of-jurisdiction case of *In re Marriage of Bahr*, No. 35315-6-II, 2008 WL 1952152 (Wash. App. 2008) (unpublished opinion), the Washington Court of Appeals considered whether a protection order preventing the defendant from coming within 500 feet of the petitioner violated the defendant's fundamental right to travel. There, the court noted that the compelling state interest was the safety and welfare of the petitioner. The court noted that the defendant's constitutional rights may be curtailed when the exercise of said right "'interferes with the victim's right to be free from invasive, oppressive and harmful behavior.'" 2008 WL 1952152, at *4 (quoting *Spence v. Kaminski*, 103 Wash. App. 325, 336, 12 P.3d 1030 [2000]). The court held that the protective order which required the defendant to leave a public establishment if his ex-wife was present did not violate his constitutional right to travel. 2008 WL 1952152, at *4.

4

Here, the State has a compelling interest of public safety and welfare to prevent Stansbury from harassing his ex-wife, Stobaugh. The protection order is narrowly tailored. It prevents Stansbury only from contacting Stobaugh directly or indirectly. It does not prevent Stansbury from seeing his children, writing his children, calling his children, or talking to his children provided such communication does not include making a request on his behalf or at his behest to their mother. So while Stansbury does have a constitutional right to be free from government interference when raising his children, the United States Constitution does not create a right for him to interfere with the rights of other persons to be free from oppressive and harassing behavior. See *United States v. Guest*, 383 U.S. 745, 768, 86 S. Ct. 1170, 16 L. Ed. 2d 239 (1966) (Harlan, J., concurring in part and dissenting in part). Therefore, enforcement of the protective order does not violate Stansbury's constitutional rights and we affirm his conviction for violation of a protective order.

Affirmed.